**Darrell POLLOCK, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 11–03–00161–CR.

Court of Appeals of Texas,
Eastland.

Sept. 16, 2004.

Darrell Pollack, Paradise, Kenneth G. Leggett, Abilene, for appellant.

Michael E. Fouts, Dist. Atty., Haskell, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

The jury convicted appellant of possession of anhydrous ammonia in a container that was not designed and manufactured to hold anhydrous ammonia. TEX.

HEALTH & SAFETY CODE ANN. § 504.001(a)(1) (Vernon 2003). The jury found that two enhancement allegations were true and assessed punishment at 17 years imprisonment. The trial court sentenced appellant in accordance with the jury's assessment. Because the evidence is legally insufficient to support the conviction, we reverse the judgment and render a judgment of acquittal.

### Background Facts

Section 504.001 of the Health & Safety Code provides:

> (a) A person commits an offense if the person:
>
> > (1) possesses and maintains anhydrous ammonia in a container or receptacle that is not designed and manufactured to hold anhydrous ammonia.

The indictment alleged that, on or about March 27, 2001, appellant possessed and maintained anhydrous ammonia in a 10–gallon metal propane tank that was not designed and manufactured to hold anhydrous ammonia.

### Issue on Appeal and Standard of Review

■ In his fourth point of error, appellant argues that the evidence is legally insufficient to establish that the tank was not designed and manufactured to hold anhydrous ammonia. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex.Cr. App.2000).

### The Evidence at Trial

The State introduced the tank in question into evidence. Through the testimony of Throckmorton County Sheriff John Riley, the State sought to establish that the tank was not designed and manufactured to hold anhydrous ammonia.

Sheriff Riley testified that the tank was stamped "LP GAS" and that "LP" stands for liquid propane. He said that the tank was made for liquid propane. Sheriff Riley testified that the tank was not sufficiently engineered to hold anhydrous ammonia because the tank was stamped LP Gas. He said that he understood that a tank could not be used for anhydrous ammonia unless the tank was an approved container for anhydrous ammonia. However, Sheriff Riley said that he was not a civil engineer or a metallurgist and that it might be necessary for a civil engineer or a metallurgist to testify about whether a container must be approved to hold anhydrous ammonia.

### Analysis

■ The State had the burden to prove beyond a reasonable doubt that the tank was not designed and manufactured to hold anhydrous ammonia. The State contends that, because the tank was stamped "LP GAS" and was made for liquid propane, the tank was not designed and manufactured to hold anhydrous ammonia. However, the record does not contain any evidence that a tank stamped "LP GAS" and made for liquid propane is not or cannot be designed and manufactured to hold anhydrous ammonia. Therefore, there is no evidence that the tank in question was not designed and manufactured to hold anhydrous ammonia.

Anhydrous ammonia is a hazardous substance, and various federal regulations apply to storage and handling of anhydrous ammonia. For example, an Occupational

Safety and Health Administration (OSHA) standard governs the storage and handling of anhydrous ammonia. *See* 29 C.F.R. § 1910.111 (2003). Also, United States Department of Transportation regulations apply to storage and shipping of anhydrous ammonia. *See* 49 C.F.R. §§ 173.301–173.315 (2003). The American National Standards Institute has published an American National Standard for Safety Requirements for the Storage and Handling of Anhydrous Ammonia. *See* American Nat'l Standards Inst. Document No. ANSI K61.1–1999.

The Texas Legislature has classified anhydrous ammonia as a hazardous substance. Section 504.001(a)(1) of the Health and Safety Code is included in a part of the Health and Safety Code that is entitled "Hazardous Substances." TEX. HEALTH & SAFETY CODE ANN. tit. 6, subtit. D (Vernon 2003). House Bill 2205 of the 76th Legislative Session became Chapter 504 of the Health and Safety Code. The bill analysis for House Bill 2205 noted that anhydrous ammonia is a key ingredient in methamphetamine production. House Comm. on Agriculture & Livestock, Bill Analysis, Tex. H.B. 2205, 76th Leg. (1999). The bill analysis also explained that theft of anhydrous ammonia can cause damage to farm equipment and that the mishandling of anhydrous ammonia can cause blindness and lung damage. Theft of anhydrous ammonia is a nationwide problem, and other states have enacted legislation that is similar to Section 504.001.[1]

The OSHA standard establishes requirements for anhydrous ammonia containers. The standard defines "container" as including "all vessels, tanks, cylinders, or spheres used for transportation, storage, or application of anhydrous ammonia." 29 C.F.R. § 1910.111(a)(2)(iv). The OSHA standard provides that each appurtenance to an anhydrous ammonia system must be approved in accordance with 29 C.F.R. § 1910.111(b)(1). Section 1910.111(b)(1) provides for various methods of approval, including the following:

(i) It was installed before February 8, 1973, and was approved, tested, and installed in accordance with either the provisions of the American National Standard for the Storage and Handling of Anhydrous Ammonia, K61.1, or the Fertilizer Institute Standards for the Storage and Handling of Agricultural Anhydrous Ammonia, M–1 . . . in effect at the time of installation; or

(ii) It is accepted, or certified, or listed, or labeled, or otherwise determined to be safe by a nationally recognized testing laboratory.

Pursuant to the OSHA standard, non-refrigerated anhydrous ammonia containers must be marked (a) with a notation "Anhydrous Ammonia" and (b) with a marking identifying compliance with the rules of the Code under which the container is constructed. 29 C.F.R. § 1910.111(b)(3)(ii)(a) & (b). Anhydrous ammonia containers must also be marked to show the maximum level to which they may be filled with liquid anhydrous ammonia at temperatures between 20 and 130 degrees Fahrenheit. 29 C.F.R. § 1910.111(b)(3)(ii)(h). The required markings must be on the container itself or on a nameplate permanently attached to it. 29 C.F.R. § 1910.111(b)(3)(ii)(j).

Under the OSHA standard, all appurtenances must be fabricated from materials proved suitable for anhydrous ammonia

---

1. *See,* for example: ARK. CODE § 5–64–1301 (2004); 720 ILL. COMP. STAT. § 21–1.5 (2004); KY. REV. STAT. § 250.489 (2004); MO. STAT. § 578.154 (2004); and WASH. REV. CODE § 69.55.20 (2004).

service. 29 C.F.R. § 1910.111(b)(6). All piping, tubing, and fittings must be made of material suitable for anhydrous service. 29 C.F.R. § 1910.111(b)(7). The standard also provides that brass, copper, or galvanized steel pipe shall not be used on non-refrigerated systems. 29 C.F.R. § 1910.111(b)(7)(iv).

To satisfy its burden under Section 504.001, the State must prove that the container in question does not meet an applicable standard or requirement for anhydrous ammonia containers, such as the OSHA standard, Department of Transportation regulations, or other federal or state standards or regulations. The State may meet its burden by presenting testimony from witnesses who are qualified to testify about applicable standards and requirements for anhydrous ammonia containers. These witnesses would include qualified experts from the fertilizer industry and qualified engineers.

In *Wootton v. State*, 132 S.W.3d 80, 89 (Tex.App.-Houston [14th Dist.] 2004, pet'n filed), the defendant argued that the evidence was legally and factually insufficient to support his conviction for possession of anhydrous ammonia with the intent to manufacture methamphetamine under TEX. HEALTH & SAFETY CODE ANN. § 481.124 (Vernon Supp.2004–2005). Section 481.124(a)(1) [2] provides:

(a) A person commits an offense if, with intent to unlawfully manufacture a controlled substance, the person possesses or transports:

(1) anhydrous ammonia.

Section 481.124(b)(1) provides:

(b) [A]n intent to unlawfully manufacture the controlled substance metham-

phetamine is presumed if the actor possesses or transports:

(1) anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia.

Section 481.124(c)(1) provides:

(c) For purposes of this section, a substance is presumed to be anhydrous ammonia if the substance is in a container or receptacle that is:

(1) designed and manufactured to lawfully hold or transport anhydrous ammonia; or

(2) not designed and manufactured to lawfully hold or transport anhydrous ammonia, if:

(A) a properly administered field test of the substance using a testing device or instrument designed and manufactured for that purpose produces a positive result for anhydrous ammonia; or

(B) a laboratory test of a water solution of the substance produces a positive result for ammonia.

In *Wootton*, police officers seized three tanks from the defendant's vehicle. *Wootton v. State, supra* at 89. Officer Robert Clark of the Harris County Sheriff's Department testified that anhydrous ammonia tanks are typically stamped "Anhydrous Ammonia Only" as required by the Texas Department of Transportation. He said that none of the tanks that were recovered from the defendant's vehicle were stamped in this manner. He also said that two of the tanks had brass valves that had turned blue in color and that the "blue" valves indicated the presence of anhydrous ammonia. He further said that, had the tanks been designed or manufac-

---

**2.** Section 481.124 was enacted in 2001. The offense in *Wootton* was committed in 2002. The language added to Section 481.124(a)(3) by the 2003 amendment is not relevant to either the *Wootton* case or this case.

tured to lawfully hold anhydrous ammonia, brass would not have come into contact with anhydrous ammonia. Officer Clark also testified that one of the tanks tested positive for anhydrous ammonia. The court held that Officer Clark's testimony was legally sufficient to raise the statutory presumption of intent to manufacture methamphetamine and that the evidence was legally and factually sufficient to support the conviction. *Wootton v. State, supra* at 89.

*Wootton* is distinguishable from this case. In this case, the State did not present any evidence about applicable Texas Department of Transportation requirements or any evidence similar to the "valve" testimony in *Wootton.* While Sheriff Riley testified that he understood that anhydrous ammonia could be held only in approved containers, the record does not demonstrate that he had any knowledge of applicable standards or regulations or that he was qualified as an expert to testify about applicable standards or regulations.

There is a dearth of authority addressing the State's burden of proof under statutes similar to Section 504.001. However, the cases of *State v. Olmedo,* 112 Wash. App. 525, 49 P.3d 960 (2002), and *State v. Dunlavy,* No. 21786-8-III, 2004 WL 505247 (Wash.App. March 16, 2004)(not designated for publication), address the State's burden under a similar statute. In *Dunlavy,* the State presented evidence that a propane tank was inadequate to store anhydrous ammonia. The court held that the evidence was insufficient to sup-

port a conviction. *State v. Dunlavy, supra* at * 2–3.[3]

We find that no rational trier of fact could have found that the tank in question was not designed and manufactured to hold anhydrous ammonia. Therefore, the evidence is legally insufficient to support appellant's conviction. Appellant's fourth point of error is sustained. In light of our disposition of appellant's fourth point of error, we need not address appellant's remaining points of error. TEX.R.APP.P. 47.1.[4]

### This Court's Ruling

We reverse the judgment of the trial court and render a judgment of acquittal.

---

3. Although *Dunlavy* is out-of-state and unpublished and, therefore, has no precedential value, we find its facts informative and its reasoning persuasive.

4. Appellant contends that Section 504.001 of the Health and Safety Code is unconstitution-

al. Appellate courts do not determine the constitutionality of a statute "unless such a determination is absolutely necessary to decide the case in which the issue is raised." *Briggs v. State,* 740 S.W.2d 803, 806–07 (Tex. Cr.App.1987).