NO. 07-04-0536-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 19, 2006
_____

JAMES MITCHELL MURPHY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 46TH DISTRICT COURT OF HARDEMAN COUNTY;

NO. 3802; HONORABLE TOM NEELY, JUDGE
_____

Before CAMPBELL and HANCOCK, JJ.[1]

**OPINION**

James Mitchell Murphy brings this appeal from his conviction for transporting anhydrous ammonia with the intent to manufacture a controlled substance. The court assessed punishment in accordance with the jury's verdict at seven years confinement. In ten issues appellant challenges the sufficiency of the evidence supporting his conviction, the admission of testimony and the procedures used in selecting the jury. We affirm.

---

[1] Don H. Reavis, Justice (Ret.) was on the panel that heard oral argument. He did not participate in the decision. TEX. R. APP. P. 41.1(b).

Quanah police chief Edward Urban, Jr. received a call from a resident about suspicious activity at a nearby farm. While Urban was watching from the road, he saw two trucks leave the farm. He recognized one as belonging to Lori Cheek, the wife of an operator of the farm. As the second truck passed, Urban saw "tanks" in the bed and smelled anhydrous ammonia. The manner in which the ammonia was being transported made him suspect it could be linked to the manufacture of methamphetamine so he stopped the vehicle. In the truck bed he found seven tanks, which he alternately described as butane or propane tanks. One lacked any valve and several had brass valves. At least one valve had a blue discoloration which he said was evidence it had been exposed to anhydrous ammonia. He arrested the driver and appellant, who was the only passenger.

After being advised of his rights in accordance with *Miranda v. Arizona*[2] appellant gave a written statement in which he described driving to the farm with Cheek's assistance where they used a hose to fill the tanks. The statement continued, "We were to sell the anhydrous ammonia and split the money with Lori."

Appellant was charged with violating section 481.124 of the Health and Safety Code, making the possession or transportation of anhydrous ammonia with the intent to unlawfully manufacture a controlled substance a felony offense. Tex. Health & Safety Code Ann. § 481.124(a) (Vernon Supp. 2006). The statute creates a presumption of intent to manufacture methamphetamine if the actor possesses or transports anhydrous ammonia in a container not designed or manufactured to lawfully be so used. Tex. Health & Safety

---

[2] 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966).

Code Ann. § 481.124(b)(1) (Vernon Supp. 2006). At the conclusion of a two-day trial the jury found appellant guilty and assessed punishment as described.

We first address appellant's challenges to the formation of the jury. By his ninth and tenth issues, appellant assigns error to the trial court's failure to require venire members to complete juror questionnaires now mandated by statute. He argues that failure deprived him of the right to effective assistance of counsel. Section 62.0132 of the Government Code provides a written jury summons must include a copy of a standard juror questionnaire requiring the information listed in the statute. Tex. Gov't Code Ann. § 62.0132 (Vernon 2005). It also requires those summoned to submit the completed questionnaire when reporting for jury service. *Id.* Information contained on a completed questionnaire is confidential but "may be" disclosed to a judge hearing the case, other court personnel, and a litigant and the litigant's attorney. Tex. Gov't Code Ann. § 62.0132 (f), (g) (Vernon 2005). Prior to voir dire, defense counsel objected to the court's failure to provide any information on panel members other than their names. The defense argued it was unable to properly decide whether to move to shuffle the jury without the information. The trial court overruled the objection, noting simply "we don't fill out jury information cards." Appellant now argues the absence of the information prejudiced the defense because the prosecutor had practiced law in the county for a long period of time and, based on his reference to some venire members by their first names, apparently knew them personally.

The State offers two arguments in response. First, it contends use of the word "may" in the statute's list of permitted recipients of questionnaire responses shows the

disclosure is within the discretion of the trial court and it did not abuse that discretion. Second, the State argues no harm was shown. The record does not support the State's view that the trial court exercised discretion not to disclose completed questionnaires. The trial judge's statement that "we don't fill out jury information cards" indicates a failure to comply with the mandatory provisions of section 62.0132 and that failure was error. The error involved a statutory, rather than constitutional, right and is subject to harmless error review under Rule of Appellate Procedure 44.2(b). We find the record shows the error did not affect a substantial right and must be disregarded.

In two cases decided before section 62.0132 made standard juror questionnaires mandatory the Court of Criminal Appeals found no right to review the information before requesting a jury shuffle. In *Davis v. State*, 782 S.W.2d 211 (Tex.Crim.App. 1989), the court held it was not error to require a party to decide to request a jury shuffle before reviewing questionnaires. *Id.* at 214. It found the legislature did not intend article 35.11 of the Code of Criminal Procedure to require anything more than allowing a defendant to view the venire members before requesting a shuffle. *Id.* at 214 (citing *Alexander v. State*, 523 S.W.2d 720, 721 (Tex.Crim.App. 1975)). In *Garza v. State*, 7 S.W.3d 164 (Tex.Crim. App. 1999), the court reiterated the holding in *Davis* and went on to hold that permitting review of juror questionnaires before requesting a shuffle was not prohibited by article 35.11 either. *Id.* at 166. Nothing in section 62.0132 alters these holdings. The purpose of juror questionnaires is to save time by providing basic information which would otherwise be obtained by oral questions. *See Barajas v. State*, 93 S.W.3d 36, 45 (Tex.Crim.App. 2002) (Womack, J., concurring) (questionnaire allows parties to obtain some information

4

"without asking questions."); *Cuellar v. State*, 943 S.W.2d 487, 495 (Tex.App.--Corpus Christi 1996, pet. ref'd) (Yanez, J., concurring). The Court of Criminal Appeals has also held the use of juror questionnaires does not relieve counsel of the duty to elicit pertinent information during voir dire. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999). The record shows defense counsel was not denied the opportunity to inquire of the venire on any matter that would have been included in a written questionnaire or limited in the amount of time to conduct voir dire. The trial court's failure to use juror questionnaires did not deprive appellant of the effective assistance of counsel. We overrule appellant's ninth and tenth issues.

Appellant's eighth issue also arises from jury selection. In it he assigns error to the denial of two challenges for cause and refusal to grant an additional peremptory challenge. The trial court has discretion in ruling on challenges for cause, and its rulings will not be upset on appeal absent an abuse of that discretion. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex.Crim.App. 1999). An appellate court must examine the record as a whole to determine whether there is support for the trial court's rulings, and, in doing so, the appellate court must give deference to the trial court judge, who was in a position to actually see and hear the venire member. *Id.* The grounds on which challenges for cause may be predicated are set out in article 35.16 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 35.16 (Vernon 2006). As relevant here, article 35.16(a)(9) permits a challenge to a venire member for cause if she cannot impartially judge the credibility of witnesses. *Ladd*, 3 S.W.3d at 560. Appellant properly preserved his complaint of error from the denial of his challenges for cause. *See Sells v. State*, 121

S.W.3d 748, 758 (Tex.Crim.App. 2003), *cert. denied*, 540 U.S. 986, 124 S.Ct. 511, 157 L.Ed.2d 378 (2003) (setting out procedure for preservation of error).

Appellant first complains of the failure to grant his challenge for cause to venire member Brenda Riggs. Riggs worked in the same building as the police chief who arrested appellant and agreed she would "probably" tend to believe the testimony of police officers. On further examination by the State, Riggs unequivocally answered she could follow an oath to render a verdict based on the evidence presented "regardless of whether you know the people testifying."

Riggs' answers indicating she would tend to believe police, but would consider all the evidence presented are indistinguishable from those given in *Ladd*, where the court held a venire member who would "tend to believe" police slightly more than others was not subject to a challenge for cause. 3 S.W.3d at 560 (citing *Smith v. State*, 907 S.W.2d 522, 531 (Tex.Crim.App. 1995)). *See also Gardner v. State,* 730 S.W.2d 675, 692-93 (Tex.Crim.App. 1987); *Turner v. State*, 671 S.W.2d 679, 681 (Tex.App.–Dallas 1984, pet. ref'd) (venire member's acquaintance with witness through church and belief he was credible did not establish challenge for cause). The trial court did not err in overruling appellant's challenge for cause to venire member Riggs.

Appellant's second challenge for cause was to venire member Schatte who initially stated she did not think she could consider probation. After the same question was put to other venire members, Schatte changed her view and answered that she could give probation if justified by the evidence. A trial court's decision to dismiss a member of the

6

venire for cause is entitled to "considerable deference." *King*, 29 S.W.3d 556, 568 (Tex.Crim.App. 2000). That deference is particularly important when the venire member's responses are vacillating, unclear or contradictory. *Id.; see Howard*, 941 S.W.2d 102, 107-08 (Tex.Crim.App. 1996) (also discussing the "vacillating veniremember"). A reviewing court considers whether the totality of the voir dire testimony supports the trial court's finding on whether the prospective juror is able to follow the law as instructed, and reverses only if a clear abuse of discretion is evident. *Id.* We see no abuse of the trial court's discretion in its apparent acceptance of Schatte's response that she could consider probation in an appropriate set of facts. We overrule appellant's eighth issue.

By his first and third issues, appellant challenges the legal and factual sufficiency of the evidence supporting a finding the containers used were not designed or manufactured to lawfully hold or transport anhydrous ammonia. His second and fourth issues challenge the legal and factual sufficiency of the evidence he transported anhydrous ammonia with intent to manufacture a controlled substance.

Section 481.124(b)(1) creates a permissive[3] presumption of intent to manufacture methamphetamine on evidence the actor transported anhydrous ammonia in a container not made for that purpose. A legal presumption permits the fact finder to infer the presumed fact from proof of the predicate fact. *Willis*, 790 S.W.2d at 310. It relieves the State of separately establishing the presumed fact or element. *Id.*; Tex. Pen. Code Ann. § 2.05(a)(2)(B) (Vernon Supp. 2006). Here the intent to manufacture methamphetamine

---

[3] Mandatory presumptions violate the federal constitution. *Willis v. State*, 790 S.W.2d 307, 309 (Tex.Crim.App.1990).

may be inferred from the use of unlawful containers. For this reason appellant's challenge to the legal sufficiency of evidence of his intent to manufacture methamphetamine must necessarily be subsumed within his challenge to the legal sufficiency of the evidence supporting the predicate fact, the transportation of anhydrous ammonia in containers not designed or manufactured for lawful use for that purpose.

Appellant's brief correctly states the standards by which we must review challenges to the legal sufficiency of the evidence and recitation of those standards here is unnecessary. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). After the parties filed their briefs in this case the Court of Criminal Appeals offered further guidance to appellate courts concerning reviews of the factual sufficiency of evidence. *See Watson v. State*, 204 S.W.3d 404 (Tex.Crim.App. 2006). Before reversing based on factual insufficiency an appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, at 417. When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001).

The evidence offered to prove the containers found in the bed of the truck in which appellant was riding were not designed or manufactured to transport anhydrous ammonia included the testimony of Chief Ed Urban, Department of Public Safety crime lab chemist William L. Todsen and volunteer firefighter Frank Walden, who participated in disposing of the tanks' contents.

Urban testified he had received training through several seminars and schools on dealing with "clandestine labs," and how to deal with them safely. Officers were instructed that ammonia will "eat" brass valves causing them to fail. He learned to look for blue discoloration on valves as a sign of corrosion from anhydrous ammonia. He was personally involved in a case in which the valve on a similar tank had failed, causing injury to an officer.

During voir dire of Todsen, he testified that, in addition to having two college degrees in chemistry, he had received training from the "DEA" on anhydrous ammonia. He received instruction on containers used for storing and transporting anhydrous ammonia, specifically that containers must use stainless steel valves because those made of brass, copper or bronze will corrode, leading to leaks of the toxic chemical. The corrosion would often result in a blue discoloration. He also made reference to the need for approval of anhydrous ammonia containers by the Department of Transportation. Based on this training and examination of the tanks, Todsen testified they were not approved to hold anhydrous ammonia.

As a volunteer firefighter Walden had received training on hazardous materials, including anhydrous ammonia and the containers used for storing and transporting it. Walden testified the primary focus of the training concerned the valves used on anhydrous ammonia tanks. He was taught they must be made of stainless steel because "the anhydrous ammonia deteriorates the copper valve." He concluded the tanks at issue were not designed or manufactured to contain anhydrous ammonia.

9

Appellant argues the State's failure to present testimony from an engineer or an expert from the fertilizer industry rendered the evidence on the adequacy of the containers to hold anhydrous ammonia legally insufficient. He cites *Pollock v. State*, 145 S.W.3d 786 (Tex.App.–Eastland 2004, pet. ref'd), in support. In *Pollock*, the court considered a statute with virtually identical language. *Id.* at 787. The evidence showed the defendant possessed anhydrous ammonia in tanks stamped "LP GAS" and included an officer's testimony that the tank "was not sufficiently engineered to hold anhydrous ammonia because the tank was stamped 'LP GAS.'" The court of appeals reversed, finding there was no evidence that a tank stamped "LP GAS" is not or cannot be designed and manufactured to hold anhydrous ammonia. It cited applicable federal regulations which were not introduced at trial, concluding the prosecution failed to meet its burden to show the containers did not meet those regulations. The court commented the State could meet its burden by presenting evidence from witnesses qualified to testify about the applicable regulations, including experts in the fertilizer industry and engineers. *Id.* at 789. The opinion went on to distinguish the facts and holding of *Wootton v. State*, 132 S.W.3d 80 (Tex.App.–Houston [14th Dist.] 2004, pet. ref'd), where prosecution was based on the same statute we consider here. In *Wootton*, an officer testified anhydrous ammonia containers are "typically" stamped "anhydrous ammonia only," as required by the Department of Transportation,[4] and they would not have brass in contact with anhydrous ammonia. 132 S.W.3d at 89. The officer also testified the blue discoloration of the brass valves indicated

---

[4] There is no indication the officer cited a specific regulation.

the presence of anhydrous ammonia. The testimony of the officers in *Wootton* was adequate because it showed the container did not meet an applicable requirement.

The evidence here rises to the level of that presented in *Wootten*. Three different witnesses testified they had received training on the characteristics of containers which may be used to hold anhydrous ammonia under applicable regulations. They consistently testified to the requirement that stainless steel valves be used, and testified the valves appearing on the tanks at issue were not stainless steel.

Appellant's argument that the evidence was insufficient because of the possibility that a placard could have been removed from the tanks[5] is irrelevant. The regulatory nonconformity on which the testimony of each witness focused was the absence of stainless steel valves. It is similarly unavailing to point to a conflict between descriptions of the valves used as brass or copper, and to the absence of expert testimony from a metallurgist. The fact finder did not need to determine whether the valves were made of brass or copper. The witnesses each explained the discoloration was the result of corrosion resulting from the material not being stainless steel. Moreover, the tanks were in evidence, and the jury was able to observe their markings and valves. The evidence was sufficient to permit a rational fact finder to find beyond a reasonable doubt the containers were not designed or manufactured to lawfully hold or transport anhydrous ammonia. We overrule appellant's first issue. By virtue of the presumption created by section 481.124(b)

---

[5] There was evidence that approved anhydrous ammonia containers will bear an identifying sticker or placard, which none of the tanks in evidence bore, but the placards could have been removed.

11

of the Health and Safety Code, the evidence was legally sufficient to support the inference of appellant's intent to manufacture methamphetamine. We overrule appellant's second issue.

Appellant's third and fourth issues challenge the factual sufficiency of evidence supporting the same elements of the offense as his first two issues. Reversal for factual insufficiency requires us to determine whether the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, at 417. The gist of appellant's argument is that his written statement to police controverts the presumption that his possession or transportation of anhydrous ammonia was with the intent to manufacture methamphetamine. In that statement appellant represented it was his intent to sell the anhydrous ammonia and split the proceeds. Urban agreed it was "entirely possible [appellant's] only intent was to make a few dollars off helping get this stuff[.]"[6]

The statement on which appellant now seeks to rely was both unsworn and made without the maker being subject to cross-examination. It is well established the fact finder is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). As such, the fact finder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Appellant's statement did not rise to the level of testimony and the jury was not compelled to believe any specific part of

---

[6] The jury charge did not include an instruction on the law of parties.

12

the statement.  The jury's verdict did not contradict the great weight and preponderance of the evidence and we overrule appellant's third and fourth issues.

Appellant's fifth, sixth and seventh issues assign error to the admission of testimony from Urban, Todsen and Walden.  His specific complaints are that the trial court failed to fulfill its "gatekeeper" function with regard to the admission of expert testimony (issue five); admission of testimony on the lawfulness of the containers used was improper because the reliability of the testimony was not established (issue six); and the trial court erred in refusing to hold "[Rule] 702, 703 and 705 hearings outside the presence of the jury" (issue seven).

Rule of Evidence 702 allows a witness qualified as an expert by "knowledge, skill, experience, training, or education" to testify in the form of an opinion.  In criminal cases Rule 705(b) entitles a party to request and conduct voir dire "directed to the underlying facts or data upon which the opinion is based" outside the presence of the jury.  If the trial judge determines the underlying facts or data do not provide a sufficient basis for the expert's opinion, the opinion is inadmissible.  Tex. R. Evid. 705(c).  A proponent's obligation to establish reliability is not limited to scientific evidence.  *Jackson v. State*, 17 S.W.3d 664, 670 (Tex.Crim.App. 2000) (*citing Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).  The considerations used to assess the reliability of expert testimony will vary with the nature of the testimony.  *Ter-Vartanyan v. R & R Freight, Inc.*, 111 S.W.3d 779, 782 (Tex.App.–Dallas 2003, pet. denied).  The record shows the trial court did conduct hearings outside the presence of the jury before

allowing each witness to testify concerning the requirements for anhydrous ammonia containers and whether the containers seized from appellant met those requirements. We overrule appellant's seventh issue.

Appellant cites *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992), and *Sexton v. State*, 93 S.W.3d 96, 100 (Tex.Crim.App. 2002), as establishing what a proponent of "scientific evidence" must show to establish reliability. But the testimony at issue was not scientific in nature. It was, at most, technical. The disputed fact was whether the containers were designed and manufactured to lawfully be used to transport anhydrous ammonia. Establishing that fact did not require proof of the scientific or engineering basis underlying the applicable regulations.[7]

Each of the three witnesses testified to his training concerning the regulatory requirement that anhydrous ammonia containers be fitted with stainless steel valves. That testimony was subject to cross-examination by the defense to expose any inaccuracies. Each of the three acknowledged his ignorance of other regulatory requirements for such containers,[8] but such admitted lack of knowledge did not make them incompetent to testify to a requirement of which they were aware and the containers in evidence did not meet.

---

[7] The DPS chemist Todsen did explain the corrosion of brass, copper and bronze resulted from ammonia being a "base." Although that portion of his testimony was not necessary to any element the State was required to establish, Todsen's expertise on that subject was shown by evidence he had two college degrees in chemistry and several years experience in the field of chemistry.

[8] Federal and state agency regulations may be judicially noticed. Tex. R. Evid. 202, 204; *Southwestern Bell Tel. Co. v. Nash*, 586 S.W.2d 647, 648 (Tex.Civ.App.--Austin 1979, no writ).

On appeal, appellant points out that one of the three witnesses identified the valve on at least one of the tanks as brass and another referred to the valves as being made of copper.[9] Again, however, the witnesses consistently testified that the tanks in evidence were not fitted with stainless steel valves. Appellant's objections at trial to the witnesses' testimony did not include an objection to their qualifications to distinguish between stainless steel valves and those made of substances such as brass. We may not review an appellate objection to testimony that does not comport with the objection made at trial. *Goff v. State*, 931 S.W.2d 537, 551 (Tex.Crim.App. 1996). Moreover, appellant did not object when the witnesses described the construction material of the valves. When the challenged evidence is admitted elsewhere in a trial without objection, no complaint over admission of the evidence is preserved for review. *Lane v. State*, 151 S.W.3d 188, 192-93 (Tex.Crim.App. 2004).

The trial court did not abuse its discretion by overruling appellant's objections pursuant to Rule 702. We overrule appellant's fifth and sixth issues.

Finding no support for appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.

---

[9] The evidence also showed one tank had a valve made of plastic.

15