COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-047-CR

 

 

 

DARRELL JAY KEEHN                                                           APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                               STATE

 

                                              ------------

 

FROM THE 78TH
DISTRICT COURT OF WICHITA COUNTY

 

------------

 

OPINION

 

------------

 

I.  Introduction








In this appeal, Appellant Darrell Jay Keehn
raises a single point challenging the trial court=s denial
of his motion to suppress.  Keehn
contends that officers= warrantless entry into an
unoccupied van that was parked in the driveway in front of his residence
violated the Fourth Amendment and Article I, Section 9 of the Texas
Constitution.  Because in this case a
police officer observed a propane tank that had a bluish-green discoloration
near its valve in plain view in the back of a van as he walked down the
driveway and by the van on his way to the front door of the residence to
conduct a Aknock and talk@ and
because the officer immediately believed the propane tank was associated with
the criminal activity, the plain view doctrine applies.  Accordingly, we will affirm the trial court=s denial
of Keehn=s motion
to suppress.

II.  Factual and Procedural History








A theft occurred in a residential area in Wichita
County.  An eyewitness to the theft told
investigators with the Wichita County Sheriff=s
Department that she saw the suspected thieves flee to the back door of 1811 Cameron
LaneBKeehn=s homeBand
later leave that residence in a van.  A
few days later, Deputy Monty Deford drove to Keehn=s
residence to conduct a follow-up interview with the residents of that house
concerning the theft.  Deputy Deford
observed the previously described van parked in the driveway in front of the
house and called the lead investigator, Sergeant Randy Elliott, to meet him at
Keehn=s
house.  As Deputy Deford walked up the
driveway toward the residence=s front
door, he walked by the van and peered inside it; he observed a propane bottle
lying in the back of the van and bluish-green discoloration or corrosion was
visible around the neck of the bottle. 
Deputy Deford believed the discoloration or corrosion around the neck of
the bottle or tank to be an indication that the bottle or tank contained
anhydrous ammonia, used in the manufacture of methamphetamine.  Deputy Deford called the drug task force to
investigate the possible anhydrous ammonia in the van.  

Wichita Falls Police Officer John Spragins, a
member of the North Texas Drug Task Force, responded to Deputy Deford=s call
to Keehn=s
home.  Officer Spragins saw the van
parked in the driveway, looked inside the van, observed the propane tankCthe type
used for an outdoor gas grillCand
observed the discoloration on the tank=s
valve.  He believed that the
discoloration indicated that the propane tank had been used to store anhydrous
ammonia; he knew that a gas grill propane tank is not an approved container to
carry anhydrous ammonia and that anhydrous ammonia is utilized in the
manufacture of methamphetamine. 

Officer Spragins seized the tank, tested the
substance in the tank, and determined that it was anhydrous ammonia.  Because the propane tank was not an
authorized container for transporting anhydrous ammonia, Officer Spragins
arrested Keehn.  The grand jury indicted
Keehn for possession of anhydrous ammonia with intent to unlawfully manufacture
a controlled substance, namely, methamphetamine.  








Keehn filed a motion to suppress the evidence
seized from the van.  After a hearing,
the trial court denied Keehn=s
motion, and Keehn subsequently entered into a plea bargain agreement.  He pleaded guilty in exchange for an
agreement that the prosecution would recommend seven years=
confinement in the Texas Department of Criminal Justice Institutional Division
and that the trial court would certify his right to appeal the suppression
ruling.  This appeal followed.

III.  Legal Search and Seizure

In his sole point, Keehn argues that the search
of the van and the seizure of the tank and its contents violated the Fourth
Amendment of the United States Constitution and Article I, Section 9 of the
Texas Constitution.  Specifically, Keehn
alleges that the plain view exception to the warrant requirement does not apply
here because it was not immediately apparent to officers that the propane tank
contained anhydrous ammonia and because the officers did not have a lawful
right to enter the driveway or the van. 

A.  Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Kelly v. State, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).  When the trial
court makes explicit fact findings, we determine whether the evidence, when
viewed in the light most favorable to the trial court=s
ruling, supports those fact findings.  Id.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id.

B. 
Findings and Conclusions

After the suppression hearing, the trial court
made the following findings and conclusions:

1.  The defendant had standing to complain about
the search of the van parked by his house.

 

2.  The propane tank found in the referenced van
was in plain view to officers  has [sic]
they made their way to the front door of the defendant=s house on the normal
course used to reach the front door.

 

3.  The peace officers had the right to be in the
place they were to see the propane tank.

 

4.  The propane tank had a discoloration
consistent with tanks that contained anhydrous ammonia.

 

5.  The propane tank was not designed to contain
anhydrous ammonia.

 

6.  The peace officers had probable cause to
believe that a crime was being committed and therefore had the right to seize
the propane tank from the van.

 

C.  Warrantless Searches and
Seizures








The Fourth Amendment protects against unreasonable
searches and seizures.  U.S. Const. amend. IV.  To suppress evidence based on an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence to rebut a presumption of proper police conduct.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).  A defendant satisfies this
burden by establishing that a search or seizure occurred without a
warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this showing, the burden of proof shifts to
the State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.  Torres, 182 S.W.3d at 902; Ford,
158 S.W.3d at 492.

Whether a search is reasonable is a question of
law that we review de novo.  Kothe v.
State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is measured by examining the
totality of the circumstances.  Id.
at 63.  It requires a balancing of the
public interest and the individual=s right
to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically defined and
well-established@ exceptions to the warrant
requirement.  McGee v. State, 105
S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see
Best, 118 S.W.3d at 862.








One of those specifically defined and
well-established exceptions is the Aplain
view@
doctrine.  Although commonly classified
as an exception to the warrant requirement, the plain view doctrine is not
truly an Aexception@ to the
warrant requirement because the seizure of property in plain view involves no
invasion of privacy and is presumptively reasonable.  Walter v. State, 28 S.W.3d 538, 541
(Tex. Crim. App. 2000).  If an article is
in plain view, neither its observation nor its seizure would involve any
invasion of privacy.  Id.  The Aplain
view@
doctrine requires only that (1) law enforcement officials have a right to be
where they are and (2) it be immediately apparent that the item seized
constitutes evidence, that is, there is probable cause to associate the item
with criminal activity.  Id.  In determining whether the officer had a
right to be where he was, the Supreme Court requires that Athe
officer did not violate the Fourth Amendment in arriving at the place from which
the evidence could be plainly viewed.@  Id. (quoting Horton v. California,
496 U.S. 128, 136, 110 S. Ct. 2301, 2308 (1990)).

D.  Analysis

At the suppression hearing, Keehn satisfied his
burden of proving that the search occurred without a warrant.  The burden then shifted to the State to prove
that the search and seizure were reasonable. 
See Torres, 182 S.W.3d at 902; Ford, 158 S.W.3d at 492.  The State alleged that the search and seizure
were reasonable under the plain view doctrine. 


 

 








1.  Lawful Vantage Point

To meet its burden, the State was first required
to prove that the officers had a right to be where they were at the time they
observed the propane tank.  Walter,
28 S.W.3d at 541.  Keehn argues that a
van parked in the driveway of his house is within the curtilage and therefore
warrants the same Fourth Amendment protections that attach to the home. 








It is certainly true that the Fourth Amendment
protections extend to the curtilage of a home. 
See Oliver v. United States, 466 U.S. 170, 180, 104 S. Ct. 1735,
1742 (1984).  ACurtilage
is the area to which extends the intimate activity associated with the sanctity
of a man=s home
and the privacies of life.@  Id. 
But even if Keehn=s driveway in front of his house
is within the curtilage of his home, law enforcement officials are not
precluded from entering the curtilage of a home by walking the Anormal
course used to reach the front door,@ as the
trial court found officers did in this case. 
See, e.g., Duhig v. State, 171 S.W.3d 631, 635 (Tex. App.BHouston
[14th Dist.] 2005, pet. ref=d)
(holding that absent express orders from a person in possession of property not
to trespass, anyone can approach front door and knock); see also Buchanan v.
State, 129 S.W.3d 767, 771-72 (Tex. App.BAmarillo
2004, pet. ref=d) (holding that law enforcement
did not conduct a search by entering fenced backyard to interview
someone).  There was no evidence that
Keehn displayed any Ano trespassing@ signs
or any other evidence indicating that he wished to keep people off his
property.  Here, law enforcement officers
had a right to approach the front door to knock and talk to Keehn by walking up
the front driveway where the van was parked. 
See Duhig, 171 S.W.3d at 635-36.    

The evidence is undisputed that Deputy Deford
initially observed the propane tank inside the van while walking to the front
door to conduct a follow-up interview with Keehn.  In Duhig, law enforcement officers
walked to the defendant=s front door, knocked, peered
inside his front door window, and observed marijuana, a scale, and a bong on a
table in the living room.  Id. at
633.  The court of appeals held that the
law enforcement officers were free to observe evidence in plain view while
rightfully at the front door.  Id.
at 636.  Specifically, the court held
that A[w]hat a
person knowingly exposes to the public, even in his own home, is not a search
subject to Fourth Amendment protection.@  Id. 


We hold that the evidence supports the trial
court=s
findings of fact and that the correct application of the law to those facts
support the trial court=s determination that law
enforcement officers had a right to be where they were when they observed the
propane tank.  See Walter, 28
S.W.3d at 541.  

 

 

 








2.  Probable Cause to Believe Propane Tank Was
Evidence of  Crime

 

The second prong of the plain view doctrine
requires the State to prove that it was immediately apparent that the propane
tank constituted evidence.  See id.  Put another way, the State had to prove that
law enforcement officers had probable cause to associate the propane tank with
criminal activity.  See id.

The criminal activity suspected by Deputy Deford
and Officer Spragins was that for which Keehn was indictedCpossessing
anhydrous ammonia with intent to unlawfully manufacture a controlled substance,
namely, methamphetamine.  Officer
Spragins also testified that the propane tank was not Aan
approved container to carry ammonia.@ 

Keehn correctly argues that possession of
anhydrous ammonia is not illegal per se, but it is illegal to possess or
transport it with the intent to manufacture a controlled substance.  Tex.
Health & Safety Code Ann. 








'
481.124(a)(1) (Vernon 2005).  And the
intent to manufacture a controlled substance is presumed when anhydrous ammonia
is stored or transported in a container or receptacle not designed and
manufactured to lawfully hold or transport anhydrous ammonia, like the propane
tank at issue in this case.  See Tex. Health & Safety Code Ann. '
481.124(b)(1) (Vernon 2005).  Thus, the
officers here possessed probable cause to believe that the propane tank was
associated with criminal activity.  See
Arrick v. State, 107 S.W.3d 710, 719 (Tex. App.BAustin
2003, pet. ref=d) (holding that the second Aimmediately
apparent@ prong
of the plain view analysis requires only probable cause, not actual knowledge
of incriminating evidence).








Keehn relies on Pollock v. State, 145
S.W.3d 786, 787-88 (Tex. App.BEastland
2004, pet. ref=d), to argue that the State must
prove by qualified expert testimony that the propane tank does not meet the
applicable standards for anhydrous ammonia containers.  The holdings of Pollock are
inapplicable here for two reasons. 
First, Pollock involved a review of the sufficiency of the
evidence to support a conviction for possession of anhydrous ammonia in a
container that was not designed and manufactured to hold anhydrous ammonia, not
a determination of whetherCunder
the second prong of the plain view analysisCofficers
possessed probable cause to believe that the propane tank was associated with
criminal activity.  The State here was
not required to prove that the propane tank violated the Occupational Safety
and Health Administration,  United States
Department of Transportation, or American National Standards Institute
standards governing the storage and handling of anhydrous ammonia, but only to
establish that Deputy Deford or Officer Spragins had probable cause to believe
that the propane tank was associated with criminal activity, a burden the State
met. 

Second, in Pollock the appellate court
held that the record did not demonstrate that the sheriff was qualified as an
expert to testify about applicable standards or regulations governing
containers for anhydrous ammonia.  Id.
at 790.  But here, Officer Spragins
testified at the suppression hearing that he had been assigned to the North
Texas Drug Task Force for five years, had traveled to Quantico, Virginia to
attend basic and advanced training conducted by the D.E.A. concerning
clandestine methamphetamine labs, and had investigated the manufacture and
production of methamphetamine in North Texas many times.  Officer Spragins testified that the valve on
the propane tank had a bluish-green discoloration, which in his opinion Aindicated
that it had been used to store anhydrous ammonia,@ which
was used to manufacture methamphetamine. 
Officer Spragins also performed a Adrager
pump@ test on
the propane tank, which revealed positive results for anhydrous ammonia.  Officer Spragins also testified that the
propane tank was not an approved container to carry ammonia.  And, the intent to manufacture a controlled
substance is presumed when anhydrous ammonia is stored in a container not
designed and manufactured to hold it, like the propane tank here. Tex. Health & Safety Code Ann.'
481.124(b)(1).

 








Viewing the evidence in the light most favorable to the trial court=s
ruling,  we hold that law enforcement
officers had probable cause to believe that the propane tankClocated
inside the van that was parked in the driveway in front of Keehn=s homeCwas
associated with criminal activity.  See
Kelly, 204 S.W.3d at 818.  It was
thus immediately apparent that the propane tank constituted evidence of a
crime.  See Walter, 28 S.W.3d at
541.  Because Deputy Deford and Officer
Spragins had a lawful right to be on Keehn=s
driveway when they observed the tank, and because it was immediately apparent
that the propane tank constituted evidence of a crime, the State met its burden
of proving the reasonableness of the search and seizure by establishing the
applicability of the plain view doctrineBa Aspecifically
defined and well-established@
exception to the warrant requirement.  See
McGee, 105 S.W.3d at 615. 
Accordingly, we overrule Keehn=s sole
point.

IV.  Conclusion

Having overruled Keehn=s sole
point on appeal, we affirm the trial court=s ruling
denying Keehn=s motion to suppress.

 

SUE
WALKER

JUSTICE

 

PANEL B: LIVINGSTON,
WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: January 18,
2007