Darrell Jay KEEHN, Appellant,

v.

The STATE of Texas, State.

No. 2–06–047–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 18, 2007.

Rehearing En Banc Overruled April 5, 2007.

Anthony C. Odiorne, Wichita County Public Defender's Office, Wichita Falls, for Appellant.

Barry L. Macha, District Atty., Wichita Falls, for Appellee.

Panel B: LIVINGSTON, WALKER, and McCOY, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

In this appeal, Appellant Darrell Jay Keehn raises a single point challenging the trial court's denial of his motion to suppress. Keehn contends that officers' warrantless entry into an unoccupied van that was parked in the driveway in front of his residence violated the Fourth Amendment and Article I, Section 9 of the Texas Constitution. Because in this case a police officer observed a propane tank that had a bluish-green discoloration near its valve in plain view in the back of a van as he

walked down the driveway and by the van on his way to the front door of the residence to conduct a "knock and talk" and because the officer immediately believed the propane tank was associated with the criminal activity, the plain view doctrine applies. Accordingly, we will affirm the trial court's denial of Keehn's motion to suppress.

## II. FACTUAL AND PROCEDURAL HISTORY

A theft occurred in a residential area in Wichita County. An eyewitness to the theft told investigators with the Wichita County Sheriff's Department that she saw the suspected thieves flee to the back door of 1811 Cameron Lane—Keehn's home— and later leave that residence in a van. A few days later, Deputy Monty Deford drove to Keehn's residence to conduct a follow-up interview with the residents of that house concerning the theft. Deputy Deford observed the previously described van parked in the driveway in front of the house and called the lead investigator, Sergeant Randy Elliott, to meet him at Keehn's house. As Deputy Deford walked up the driveway toward the residence's front door, he walked by the van and peered inside it; he observed a propane bottle lying in the back of the van and bluish-green discoloration or corrosion was visible around the neck of the bottle. Deputy Deford believed the discoloration or corrosion around the neck of the bottle or tank to be an indication that the bottle or tank contained anhydrous ammonia, used in the manufacture of methamphetamine. Deputy Deford called the drug task force to investigate the possible anhydrous ammonia in the van.

Wichita Falls Police Officer John Spragins, a member of the North Texas Drug Task Force, responded to Deputy Deford's call to Keehn's home. Officer Spragins saw the van parked in the driveway, looked inside the van, observed the propane tank—the type used for an outdoor gas grill—and observed the discoloration on the tank's valve. He believed that the discoloration indicated that the propane tank had been used to store anhydrous ammonia; he knew that a gas grill propane tank is not an approved container to carry anhydrous ammonia and that anhydrous ammonia is utilized in the manufacture of methamphetamine.

Officer Spragins seized the tank, tested the substance in the tank, and determined that it was anhydrous ammonia. Because the propane tank was not an authorized container for transporting anhydrous ammonia, Officer Spragins arrested Keehn. The grand jury indicted Keehn for possession of anhydrous ammonia with intent to unlawfully manufacture a controlled substance, namely, methamphetamine.

Keehn filed a motion to suppress the evidence seized from the van. After a hearing, the trial court denied Keehn's motion, and Keehn subsequently entered into a plea bargain agreement. He pleaded guilty in exchange for an agreement that the prosecution would recommend seven years' confinement in the Texas Department of Criminal Justice Institutional Division and that the trial court would certify his right to appeal the suppression ruling. This appeal followed.

## III. LEGAL SEARCH AND SEIZURE

In his sole point, Keehn argues that the search of the van and the seizure of the tank and its contents violated the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution. Specifically, Keehn alleges that the plain view exception to the warrant requirement does not apply here because it was not immediately apparent to officers that the propane tank contained anhydrous ammonia and because the offi-

cers did not have a lawful right to enter the driveway or the van.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex.App.-Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex.Crim.App.2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex.App.-Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim. App.2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Id.* We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.*

### B. Findings and Conclusions

After the suppression hearing, the trial court made the following findings and conclusions:

1. The defendant had standing to complain about the search of the van parked by his house.

2. The propane tank found in the referenced van was in plain view to officers has [sic] they made their way to the front door of the defendant's house on the normal course used to reach the front door.

3. The peace officers had the right to be in the place they were to see the propane tank.

4. The propane tank had a discoloration consistent with tanks that contained anhydrous ammonia.

5. The propane tank was not designed to contain anhydrous ammonia.

6. The peace officers had probable cause to believe that a crime was being committed and therefore had the right to seize the propane tank from the van.

### C. Warrantless Searches and Seizures

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To suppress evidence based on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence to rebut a presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App.2005); *Ford v. State*, 158

S.W.3d 488, 492 (Tex.Crim.App.2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Torres,* 182 S.W.3d at 902; *Ford,* 158 S.W.3d at 492. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Torres,* 182 S.W.3d at 902; *Ford,* 158 S.W.3d at 492.

██ Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex.Crim.App.2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App.), *cert. denied,* 540 U.S. 1004, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003); *see Best,* 118 S.W.3d at 862.

██ One of those specifically defined and well-established exceptions is the "plain view" doctrine. Although commonly classified as an exception to the warrant requirement, the plain view doctrine is not truly an "exception" to the warrant requirement because the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable. *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim. App.2000). If an article is in plain view, neither its observation nor its seizure would involve any invasion of privacy. *Id.* The "plain view" doctrine requires only that (1) law enforcement officials have a right to be where they are and (2) it be immediately apparent that the item seized constitutes evidence, that is, there is prob-able cause to associate the item with criminal activity. *Id.* In determining whether the officer had a right to be where he was, the Supreme Court requires that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* (quoting *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)).

### D. Analysis

██ At the suppression hearing, Keehn satisfied his burden of proving that the search occurred without a warrant. The burden then shifted to the State to prove that the search and seizure were reasonable. *See Torres,* 182 S.W.3d at 902; *Ford,* 158 S.W.3d at 492. The State alleged that the search and seizure were reasonable under the plain view doctrine.

#### 1. Lawful Vantage Point

To meet its burden, the State was first required to prove that the officers had a right to be where they were at the time they observed the propane tank. *Walter,* 28 S.W.3d at 541. Keehn argues that a van parked in the driveway of his house is within the curtilage and therefore warrants the same Fourth Amendment protections that attach to the home.

It is certainly true that the Fourth Amendment protections extend to the curtilage of a home. *See Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* But even if Keehn's driveway in front of his house is within the curtilage of his home, law enforcement officials are not precluded from entering the curtilage of a home by walking the "normal course used to reach the front door," as the trial court found officers did in this case. *See, e.g.,*

*Duhig v. State,* 171 S.W.3d 631, 635 (Tex. App.-Houston [14th Dist.] 2005, pet. ref'd) (holding that absent express orders from a person in possession of property not to trespass, anyone can approach front door and knock); *see also Buchanan v. State,* 129 S.W.3d 767, 771–72 (Tex.App.-Amarillo 2004, pet. ref'd) (holding that law enforcement did not conduct a search by entering fenced backyard to interview someone). There was no evidence that Keehn displayed any "no trespassing" signs or any other evidence indicating that he wished to keep people off his property. Here, law enforcement officers had a right to approach the front door to knock and talk to Keehn by walking up the front driveway where the van was parked. *See Duhig,* 171 S.W.3d at 635–36.

The evidence is undisputed that Deputy Deford initially observed the propane tank inside the van while walking to the front door to conduct a follow-up interview with Keehn. In *Duhig,* law enforcement officers walked to the defendant's front door, knocked, peered inside his front door window, and observed marijuana, a scale, and a bong on a table in the living room. *Id.* at 633. The court of appeals held that the law enforcement officers were free to observe evidence in plain view while rightfully at the front door. *Id.* at 636. Specifically, the court held that "[w]hat a person knowingly exposes to the public, even in his own home, is not a search subject to Fourth Amendment protection." *Id.*

We hold that the evidence supports the trial court's findings of fact and that the correct application of the law to those facts support the trial court's determination that law enforcement officers had a right to be where they were when they observed the propane tank. *See Walter,* 28 S.W.3d at 541.

### 2. Probable Cause to Believe Propane Tank Was Evidence of Crime

The second prong of the plain view doctrine requires the State to prove that it was immediately apparent that the propane tank constituted evidence. *See id.* Put another way, the State had to prove that law enforcement officers had probable cause to associate the propane tank with criminal activity. *See id.*

The criminal activity suspected by Deputy Deford and Officer Spragins was that for which Keehn was indicted—possessing anhydrous ammonia with intent to unlawfully manufacture a controlled substance, namely, methamphetamine. Officer Spragins also testified that the propane tank was not "an approved container to carry ammonia."

Keehn correctly argues that possession of anhydrous ammonia is not illegal per se, but it is illegal to possess or transport it with the intent to manufacture a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.124(a)(1) (Vernon 2005). And the intent to manufacture a controlled substance is presumed when anhydrous ammonia is stored or transported in a container or receptacle not designed and manufactured to lawfully hold or transport anhydrous ammonia, like the propane tank at issue in this case. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124(b)(1) (Vernon 2005). Thus, the officers here possessed probable cause to believe that the propane tank was associated with criminal activity. *See Arrick v. State,* 107 S.W.3d 710, 719 (Tex.App.-Austin 2003, pet. ref'd) (holding that the second "immediately apparent" prong of the plain view analysis requires only probable cause, not actual knowledge of incriminating evidence).

Keehn relies on *Pollock v. State,* 145 S.W.3d 786, 787–88 (Tex.App.-Eastland 2004, pet. ref'd), to argue that the State must prove by qualified expert testimony that the propane tank does not meet the

applicable standards for anhydrous ammonia containers. The holdings of *Pollock* are inapplicable here for two reasons. First, *Pollock* involved a review of the sufficiency of the evidence to support a conviction for possession of anhydrous ammonia in a container that was not designed and manufactured to hold anhydrous ammonia, not a determination of whether—under the second prong of the plain view analysis—officers possessed probable cause to believe that the propane tank was associated with criminal activity. The State here was not required to prove that the propane tank violated the Occupational Safety and Health Administration, United States Department of Transportation, or American National Standards Institute standards governing the storage and handling of anhydrous ammonia, but only to establish that Deputy Deford or Officer Spragins had probable cause to believe that the propane tank was associated with criminal activity, a burden the State met.

Second, in *Pollock* the appellate court held that the record did not demonstrate that the sheriff was qualified as an expert to testify about applicable standards or regulations governing containers for anhydrous ammonia. *Id.* at 790. But here, Officer Spragins testified at the suppression hearing that he had been assigned to the North Texas Drug Task Force for five years, had traveled to Quantico, Virginia to attend basic and advanced training conducted by the D.E.A. concerning clandestine methamphetamine labs, and had investigated the manufacture and production of methamphetamine in North Texas many times. Officer Spragins testified that the valve on the propane tank had a bluish-green discoloration, which in his opinion "indicated that it had been used to store anhydrous ammonia," which was used to manufacture methamphetamine. Officer Spragins also performed a "drager pump" test on the propane tank, which revealed positive results for anhydrous ammonia. Officer Spragins also testified that the propane tank was not an approved container to carry ammonia. And, the intent to manufacture a controlled substance is presumed when anhydrous ammonia is stored in a container not designed and manufactured to hold it, like the propane tank here. TEX. HEALTH & SAFETY CODE ANN. § 481.124(b)(1).

Viewing the evidence in the light most favorable to the trial court's ruling, we hold that law enforcement officers had probable cause to believe that the propane tank—located inside the van that was parked in the driveway in front of Keehn's home—was associated with criminal activity. *See Kelly*, 204 S.W.3d at 818. It was thus immediately apparent that the propane tank constituted evidence of a crime. *See Walter*, 28 S.W.3d at 541. Because Deputy Deford and Officer Spragins had a lawful right to be on Keehn's driveway when they observed the tank, and because it was immediately apparent that the propane tank constituted evidence of a crime, the State met its burden of proving the reasonableness of the search and seizure by establishing the applicability of the plain view doctrine—a "specifically defined and well-established" exception to the warrant requirement. *See McGee*, 105 S.W.3d at 615. Accordingly, we overrule Keehn's sole point.

## IV. CONCLUSION

Having overruled Keehn's sole point on appeal, we affirm the trial court's ruling denying Keehn's motion to suppress.