NO. 07-04-0536-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 19, 2006


______________________________



JAMES MITCHELL MURPHY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 46TH DISTRICT COURT OF HARDEMAN COUNTY;



NO. 3802; HONORABLE TOM NEELY, JUDGE


_______________________________




Before CAMPBELL and HANCOCK, JJ. (1)

OPINION
 

 James Mitchell Murphy brings this appeal from his conviction for transporting
anhydrous ammonia with the intent to manufacture a controlled substance. The court
assessed punishment in accordance with the jury's verdict at seven years confinement. 
In ten issues appellant challenges the sufficiency of the evidence supporting his conviction,
the admission of testimony and the procedures used in selecting the jury. We affirm.

 Quanah police chief Edward Urban, Jr. received a call from a resident about
suspicious activity at a nearby farm. While Urban was watching from the road, he saw two
trucks leave the farm. He recognized one as belonging to Lori Cheek, the wife of an
operator of the farm. As the second truck passed, Urban saw "tanks" in the bed and
smelled anhydrous ammonia. The manner in which the ammonia was being transported
made him suspect it could be linked to the manufacture of methamphetamine so he
stopped the vehicle. In the truck bed he found seven tanks, which he alternately described
as butane or propane tanks. One lacked any valve and several had brass valves. At least
one valve had a blue discoloration which he said was evidence it had been exposed to
anhydrous ammonia. He arrested the driver and appellant, who was the only passenger. 

 After being advised of his rights in accordance with Miranda v. Arizona (2)
 appellant
gave a written statement in which he described driving to the farm with Cheek's assistance
where they used a hose to fill the tanks. The statement continued, "We were to sell the
anhydrous ammonia and split the money with Lori." 

 Appellant was charged with violating section 481.124 of the Health and Safety
Code, making the possession or transportation of anhydrous ammonia with the intent to
unlawfully manufacture a controlled substance a felony offense. Tex. Health & Safety Code
Ann. § 481.124(a) (Vernon Supp. 2006). The statute creates a presumption of intent to
manufacture methamphetamine if the actor possesses or transports anhydrous ammonia
in a container not designed or manufactured to lawfully be so used. Tex. Health & Safety
Code Ann. § 481.124(b)(1) (Vernon Supp. 2006). At the conclusion of a two-day trial the
jury found appellant guilty and assessed punishment as described. 

 We first address appellant's challenges to the formation of the jury. By his ninth and
tenth issues, appellant assigns error to the trial court's failure to require venire members
to complete juror questionnaires now mandated by statute. He argues that failure deprived
him of the right to effective assistance of counsel. Section 62.0132 of the Government
Code provides a written jury summons must include a copy of a standard juror
questionnaire requiring the information listed in the statute. Tex. Gov't Code Ann. §
62.0132 (Vernon 2005). It also requires those summoned to submit the completed
questionnaire when reporting for jury service. Id. Information contained on a completed
questionnaire is confidential but "may be" disclosed to a judge hearing the case, other court
personnel, and a litigant and the litigant's attorney. Tex. Gov't Code Ann. § 62.0132 (f),
(g) (Vernon 2005). Prior to voir dire, defense counsel objected to the court's failure to
provide any information on panel members other than their names. The defense argued
it was unable to properly decide whether to move to shuffle the jury without the information. 
The trial court overruled the objection, noting simply "we don't fill out jury information
cards." Appellant now argues the absence of the information prejudiced the defense
because the prosecutor had practiced law in the county for a long period of time and,
based on his reference to some venire members by their first names, apparently knew
them personally.

 The State offers two arguments in response. First, it contends use of the word
"may" in the statute's list of permitted recipients of questionnaire responses shows the
disclosure is within the discretion of the trial court and it did not abuse that discretion. 
Second, the State argues no harm was shown. The record does not support the State's
view that the trial court exercised discretion not to disclose completed questionnaires. The
trial judge's statement that "we don't fill out jury information cards" indicates a failure to
comply with the mandatory provisions of section 62.0132 and that failure was error. The
error involved a statutory, rather than constitutional, right and is subject to harmless error
review under Rule of Appellate Procedure 44.2(b). We find the record shows the error did
not affect a substantial right and must be disregarded. 

 In two cases decided before section 62.0132 made standard juror questionnaires
mandatory the Court of Criminal Appeals found no right to review the information before
requesting a jury shuffle. In Davis v. State, 782 S.W.2d 211 (Tex.Crim.App. 1989), the
court held it was not error to require a party to decide to request a jury shuffle before
reviewing questionnaires. Id. at 214. It found the legislature did not intend article 35.11
of the Code of Criminal Procedure to require anything more than allowing a defendant to
view the venire members before requesting a shuffle. Id. at 214 (citing Alexander v. State,
523 S.W.2d 720, 721 (Tex.Crim.App. 1975)). In Garza v. State, 7 S.W.3d 164 (Tex.Crim.
App. 1999), the court reiterated the holding in Davis and went on to hold that permitting
review of juror questionnaires before requesting a shuffle was not prohibited by article
35.11 either. Id. at 166. Nothing in section 62.0132 alters these holdings. The purpose
of juror questionnaires is to save time by providing basic information which would otherwise
be obtained by oral questions. See Barajas v. State, 93 S.W.3d 36, 45 (Tex.Crim.App.
2002) (Womack, J., concurring) (questionnaire allows parties to obtain some information
"without asking questions."); Cuellar v. State, 943 S.W.2d 487, 495 (Tex.App.--Corpus
Christi 1996, pet. ref'd) (Yanez, J., concurring). The Court of Criminal Appeals has also
held the use of juror questionnaires does not relieve counsel of the duty to elicit pertinent
information during voir dire. Gonzales v. State, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999). 
The record shows defense counsel was not denied the opportunity to inquire of the venire
on any matter that would have been included in a written questionnaire or limited in the
amount of time to conduct voir dire. The trial court's failure to use juror questionnaires did
not deprive appellant of the effective assistance of counsel. We overrule appellant's ninth
and tenth issues. 

 Appellant's eighth issue also arises from jury selection. In it he assigns error to the
denial of two challenges for cause and refusal to grant an additional peremptory challenge. 
The trial court has discretion in ruling on challenges for cause, and its rulings will not be
upset on appeal absent an abuse of that discretion. Ladd v. State, 3 S.W.3d 547, 559
(Tex.Crim.App. 1999). An appellate court must examine the record as a whole to
determine whether there is support for the trial court's rulings, and, in doing so, the
appellate court must give deference to the trial court judge, who was in a position to
actually see and hear the venire member. Id. The grounds on which challenges for cause
may be predicated are set out in article 35.16 of the Code of Criminal Procedure. Tex.
Code Crim. Proc. Ann. art. 35.16 (Vernon 2006). As relevant here, article 35.16(a)(9)
permits a challenge to a venire member for cause if she cannot impartially judge the
credibility of witnesses. Ladd, 3 S.W.3d at 560. Appellant properly preserved his
complaint of error from the denial of his challenges for cause. See Sells v. State, 121
S.W.3d 748, 758 (Tex.Crim.App. 2003), cert. denied, 540 U.S. 986, 124 S.Ct. 511, 157
L.Ed.2d 378 (2003) (setting out procedure for preservation of error). 

 Appellant first complains of the failure to grant his challenge for cause to venire
member Brenda Riggs. Riggs worked in the same building as the police chief who arrested
appellant and agreed she would "probably" tend to believe the testimony of police officers. 
On further examination by the State, Riggs unequivocally answered she could follow an
oath to render a verdict based on the evidence presented "regardless of whether you know
the people testifying." 

 Riggs' answers indicating she would tend to believe police, but would consider all
the evidence presented are indistinguishable from those given in Ladd, where the court
held a venire member who would "tend to believe" police slightly more than others was not
subject to a challenge for cause. 3 S.W.3d at 560 (citing Smith v. State, 907 S.W.2d 522,
531 (Tex.Crim.App. 1995)). See also Gardner v. State, 730 S.W.2d 675, 692-93
(Tex.Crim.App. 1987); Turner v. State, 671 S.W.2d 679, 681 (Tex.App.-Dallas 1984, pet.
ref'd) (venire member's acquaintance with witness through church and belief he was
credible did not establish challenge for cause). The trial court did not err in overruling
appellant's challenge for cause to venire member Riggs.

 Appellant's second challenge for cause was to venire member Schatte who initially
stated she did not think she could consider probation. After the same question was put to
other venire members, Schatte changed her view and answered that she could give
probation if justified by the evidence. A trial court's decision to dismiss a member of the
venire for cause is entitled to "considerable deference." King, 29 S.W.3d 556, 568
(Tex.Crim.App. 2000). That deference is particularly important when the venire member's
responses are vacillating, unclear or contradictory. Id.; see Howard, 941 S.W.2d 102, 107-08 (Tex.Crim.App. 1996) (also discussing the "vacillating veniremember"). A reviewing
court considers whether the totality of the voir dire testimony supports the trial court's
finding on whether the prospective juror is able to follow the law as instructed, and reverses
only if a clear abuse of discretion is evident. Id. We see no abuse of the trial court's
discretion in its apparent acceptance of Schatte's response that she could consider
probation in an appropriate set of facts. We overrule appellant's eighth issue.

 By his first and third issues, appellant challenges the legal and factual sufficiency
of the evidence supporting a finding the containers used were not designed or
manufactured to lawfully hold or transport anhydrous ammonia. His second and fourth
issues challenge the legal and factual sufficiency of the evidence he transported anhydrous
ammonia with intent to manufacture a controlled substance. 

 Section 481.124(b)(1) creates a permissive (3) presumption of intent to manufacture
methamphetamine on evidence the actor transported anhydrous ammonia in a container
not made for that purpose. A legal presumption permits the fact finder to infer the
presumed fact from proof of the predicate fact. Willis, 790 S.W.2d at 310. It relieves the
State of separately establishing the presumed fact or element. Id.; Tex. Pen. Code Ann.
§ 2.05(a)(2)(B) (Vernon Supp. 2006). Here the intent to manufacture methamphetamine
may be inferred from the use of unlawful containers. For this reason appellant's challenge
to the legal sufficiency of evidence of his intent to manufacture methamphetamine must
necessarily be subsumed within his challenge to the legal sufficiency of the evidence
supporting the predicate fact, the transportation of anhydrous ammonia in containers not
designed or manufactured for lawful use for that purpose.

 Appellant's brief correctly states the standards by which we must review challenges
to the legal sufficiency of the evidence and recitation of those standards here is
unnecessary. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979). After the parties filed their briefs in this case the Court of Criminal Appeals offered
further guidance to appellate courts concerning reviews of the factual sufficiency of
evidence. See Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). Before reversing
based on factual insufficiency an appellate court must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Watson, at 417. When conducting a sufficiency review, we
consider all the evidence admitted, whether proper or improper. Conner v. State, 67
S.W.3d 192, 197 (Tex.Crim.App. 2001). 

 The evidence offered to prove the containers found in the bed of the truck in which
appellant was riding were not designed or manufactured to transport anhydrous ammonia 
included the testimony of Chief Ed Urban, Department of Public Safety crime lab chemist
William L. Todsen and volunteer firefighter Frank Walden, who participated in disposing
of the tanks' contents.

 Urban testified he had received training through several seminars and schools on
dealing with "clandestine labs," and how to deal with them safely. Officers were instructed
that ammonia will "eat" brass valves causing them to fail. He learned to look for blue
discoloration on valves as a sign of corrosion from anhydrous ammonia. He was
personally involved in a case in which the valve on a similar tank had failed, causing injury
to an officer. 

 During voir dire of Todsen, he testified that, in addition to having two college
degrees in chemistry, he had received training from the "DEA" on anhydrous ammonia. 
He received instruction on containers used for storing and transporting anhydrous
ammonia, specifically that containers must use stainless steel valves because those made
of brass, copper or bronze will corrode, leading to leaks of the toxic chemical. The
corrosion would often result in a blue discoloration. He also made reference to the need
for approval of anhydrous ammonia containers by the Department of Transportation. 
Based on this training and examination of the tanks, Todsen testified they were not
approved to hold anhydrous ammonia.

 As a volunteer firefighter Walden had received training on hazardous materials,
including anhydrous ammonia and the containers used for storing and transporting it. 
Walden testified the primary focus of the training concerned the valves used on anhydrous
ammonia tanks. He was taught they must be made of stainless steel because "the
anhydrous ammonia deteriorates the copper valve." He concluded the tanks at issue were
not designed or manufactured to contain anhydrous ammonia. 

 Appellant argues the State's failure to present testimony from an engineer or an
expert from the fertilizer industry rendered the evidence on the adequacy of the containers
to hold anhydrous ammonia legally insufficient. He cites Pollock v. State, 145 S.W.3d 786
(Tex.App.-Eastland 2004, pet. ref'd), in support. In Pollock, the court considered a statute
with virtually identical language. Id. at 787. The evidence showed the defendant
possessed anhydrous ammonia in tanks stamped "LP GAS" and included an officer's
testimony that the tank "was not sufficiently engineered to hold anhydrous ammonia
because the tank was stamped 'LP GAS.'" The court of appeals reversed, finding there
was no evidence that a tank stamped "LP GAS" is not or cannot be designed and
manufactured to hold anhydrous ammonia. It cited applicable federal regulations which
were not introduced at trial, concluding the prosecution failed to meet its burden to show
the containers did not meet those regulations. The court commented the State could meet
its burden by presenting evidence from witnesses qualified to testify about the applicable
regulations, including experts in the fertilizer industry and engineers. Id. at 789. The
opinion went on to distinguish the facts and holding of Wootton v. State, 132 S.W.3d 80
(Tex.App.-Houston [14th Dist.] 2004, pet. ref'd), where prosecution was based on the same
statute we consider here. In Wootton, an officer testified anhydrous ammonia containers
are "typically" stamped "anhydrous ammonia only," as required by the Department of
Transportation, (4) and they would not have brass in contact with anhydrous ammonia. 132
S.W.3d at 89. The officer also testified the blue discoloration of the brass valves indicated
the presence of anhydrous ammonia. The testimony of the officers in Wootton was
adequate because it showed the container did not meet an applicable requirement. 

 The evidence here rises to the level of that presented in Wootten. Three different
witnesses testified they had received training on the characteristics of containers which
may be used to hold anhydrous ammonia under applicable regulations. They consistently
testified to the requirement that stainless steel valves be used, and testified the valves
appearing on the tanks at issue were not stainless steel.

 Appellant's argument that the evidence was insufficient because of the possibility
that a placard could have been removed from the tanks (5) is irrelevant. The regulatory
nonconformity on which the testimony of each witness focused was the absence of
stainless steel valves. It is similarly unavailing to point to a conflict between descriptions
of the valves used as brass or copper, and to the absence of expert testimony from a
metallurgist. The fact finder did not need to determine whether the valves were made of
brass or copper. The witnesses each explained the discoloration was the result of
corrosion resulting from the material not being stainless steel. Moreover, the tanks were
in evidence, and the jury was able to observe their markings and valves. The evidence was
sufficient to permit a rational fact finder to find beyond a reasonable doubt the containers
were not designed or manufactured to lawfully hold or transport anhydrous ammonia. We
overrule appellant's first issue. By virtue of the presumption created by section 481.124(b)
of the Health and Safety Code, the evidence was legally sufficient to support the inference
of appellant's intent to manufacture methamphetamine. We overrule appellant's second
issue.

 Appellant's third and fourth issues challenge the factual sufficiency of evidence
supporting the same elements of the offense as his first two issues. Reversal for factual
insufficiency requires us to determine whether the great weight and preponderance of the
evidence contradicts the jury's verdict. Watson, at 417. The gist of appellant's argument
is that his written statement to police controverts the presumption that his possession or
transportation of anhydrous ammonia was with the intent to manufacture
methamphetamine. In that statement appellant represented it was his intent to sell the
anhydrous ammonia and split the proceeds. Urban agreed it was "entirely possible
[appellant's] only intent was to make a few dollars off helping get this stuff[.]" (6) 

 The statement on which appellant now seeks to rely was both unsworn and made
without the maker being subject to cross-examination. It is well established the fact finder 
is the exclusive judge of the credibility of the witnesses and the weight to be given their
testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). As such, the
fact finder may choose to believe or disbelieve all or any part of any witness's testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Appellant's statement did not
rise to the level of testimony and the jury was not compelled to believe any specific part of
the statement. The jury's verdict did not contradict the great weight and preponderance
of the evidence and we overrule appellant's third and fourth issues.

 Appellant's fifth, sixth and seventh issues assign error to the admission of testimony
from Urban, Todsen and Walden. His specific complaints are that the trial court failed to
fulfill its "gatekeeper" function with regard to the admission of expert testimony (issue five);
admission of testimony on the lawfulness of the containers used was improper because
the reliability of the testimony was not established (issue six); and the trial court erred in
refusing to hold "[Rule] 702, 703 and 705 hearings outside the presence of the jury" (issue
seven).

 Rule of Evidence 702 allows a witness qualified as an expert by "knowledge, skill,
experience, training, or education" to testify in the form of an opinion. In criminal cases
Rule 705(b) entitles a party to request and conduct voir dire "directed to the underlying
facts or data upon which the opinion is based" outside the presence of the jury. If the trial
judge determines the underlying facts or data do not provide a sufficient basis for the
expert's opinion, the opinion is inadmissible. Tex. R. Evid. 705(c). A proponent's
obligation to establish reliability is not limited to scientific evidence. Jackson v. State, 17
S.W.3d 664, 670 (Tex.Crim.App. 2000) (citing Kumho Tire Co., v. Carmichael, 526 U.S.
137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). The considerations used to assess
the reliability of expert testimony will vary with the nature of the testimony. Ter-Vartanyan
v. R & R Freight, Inc., 111 S.W.3d 779, 782 (Tex.App.-Dallas 2003, pet. denied). The
record shows the trial court did conduct hearings outside the presence of the jury before
allowing each witness to testify concerning the requirements for anhydrous ammonia
containers and whether the containers seized from appellant met those requirements. We
overrule appellant's seventh issue.

 Appellant cites Kelly v. State, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992), and
Sexton v. State, 93 S.W.3d 96, 100 (Tex.Crim.App. 2002), as establishing what a
proponent of "scientific evidence" must show to establish reliability. But the testimony at
issue was not scientific in nature. It was, at most, technical. The disputed fact was
whether the containers were designed and manufactured to lawfully be used to transport
anhydrous ammonia. Establishing that fact did not require proof of the scientific or
engineering basis underlying the applicable regulations. (7) 

 Each of the three witnesses testified to his training concerning the regulatory
requirement that anhydrous ammonia containers be fitted with stainless steel valves. That
testimony was subject to cross-examination by the defense to expose any inaccuracies. 
Each of the three acknowledged his ignorance of other regulatory requirements for such
containers, (8) but such admitted lack of knowledge did not make them incompetent to testify
to a requirement of which they were aware and the containers in evidence did not meet. 

 On appeal, appellant points out that one of the three witnesses identified the valve
on at least one of the tanks as brass and another referred to the valves as being made of
copper. (9) Again, however, the witnesses consistently testified that the tanks in evidence
were not fitted with stainless steel valves. Appellant's objections at trial to the witnesses'
testimony did not include an objection to their qualifications to distinguish between
stainless steel valves and those made of substances such as brass. We may not review 
an appellate objection to testimony that does not comport with the objection made at trial. 
Goff v. State, 931 S.W.2d 537, 551 (Tex.Crim.App. 1996). Moreover, appellant did not
object when the witnesses described the construction material of the valves. When the
challenged evidence is admitted elsewhere in a trial without objection, no complaint over
admission of the evidence is preserved for review. Lane v. State, 151 S.W.3d 188, 192-93
(Tex.Crim.App. 2004). 

 The trial court did not abuse its discretion by overruling appellant's objections
pursuant to Rule 702. We overrule appellant's fifth and sixth issues.

 Finding no support for appellant's issues, we affirm the judgment of the trial court.

 James T. Campbell

 Justice




 


Publish.

1. Don H. Reavis, Justice (Ret.) was on the panel that heard oral argument. He did
not participate in the decision. Tex. R. App. P. 41.1(b). 
2. 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966).

3. Mandatory presumptions violate the federal constitution. Willis v. State, 790
S.W.2d 307, 309 (Tex.Crim.App.1990). 
4. There is no indication the officer cited a specific regulation.
5. There was evidence that approved anhydrous ammonia containers will bear an
identifying sticker or placard, which none of the tanks in evidence bore, but the placards
could have been removed. 
6. The jury charge did not include an instruction on the law of parties. 
7. The DPS chemist Todsen did explain the corrosion of brass, copper and bronze
resulted from ammonia being a "base." Although that portion of his testimony was not
necessary to any element the State was required to establish, Todsen's expertise on that
subject was shown by evidence he had two college degrees in chemistry and several years
experience in the field of chemistry.
8. Federal and state agency regulations may be judicially noticed. Tex. R. Evid. 202,
204; Southwestern Bell Tel. Co. v. Nash, 586 S.W.2d 647, 648 (Tex.Civ.App.--Austin 1979,
no writ).
9. The evidence also showed one tank had a valve made of plastic.