Opinion issued April 1, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00901-CR

———————————

Kelly Wayne Dozier, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 434th District Court

Fort Bend County, Texas



Trial Court Case No. 45362

 



MEMORANDUM OPINION

A jury
found Kelly Wayne Dozier guilty for the murder of his estranged wife, Donna
Dozier, and assessed a sentence of sixty years’ imprisonment.  Dozier seeks reversal of the conviction,
contending that (1) the trial court erred in excluding certain members of
Donna’s family from testifying during the punishment phase as to their opinions
that Dozier should not receive the maximum sentence; (2) the trial court erred
in denying Dozier’s motions to strike for cause (a) a prospective juror who
stated that he could not consider probation in a murder case, and (b) a
prospective juror who stated that he could not consider any circumstances other
than those of the crime itself in assessing punishment; (3) the trial court
erred in denying Dozier’s motion for new trial based on a juror’s failure to
divulge that he had been charged with theft; and (4) Texas’s statutory
requirement that a defendant bear the burden to prove sudden passion by a
preponderance of the evidence violates his due process rights as well as the Sixth
Amendment of the United States Constitution in that it exposes a defendant to a
greater potential sentence than the State must establish by a reasonable
doubt.  Finding no error, we affirm.

BACKGROUND

When Dozier became unemployed in
early 2006, he began spending hours at his computer, viewing pornography and
using his wife’s identity and funds to meet his own financial obligations.  In September 2006, Donna left Dozier after he
threatened and assaulted her with a bat. 
Dozier began stalking Donna at her workplace, sometimes spending time in
her car.  Later that month, Dozier bought
a handgun, but returned it to the store on October 2.   

On October 6, 2006, Dozier agreed
to meet a law enforcement officer at his home so the officer could serve him
with an ex parte temporary protective order, but Dozier was not present at the
appointed time.  A few days later, Dozier
returned to the gun store for the third time. 
He repurchased a handgun and also bought two boxes of ammunition.  

The next day, Dozier rented a car
and then drove to Donna’s workplace. 
Dozier spoke to Donna near her car in the parking lot.  Donna confronted Dozier about his stalking
behavior and threatened to call the police and have Dozier arrested.  Donna turned to walk back into the building,
at the same time dialing her cell phone. 
Dozier chased her down, grabbed her, and shot her in the back of the
head, causing her death.  Dozier fled the
scene in the rental car, but was later arrested at his home and charged with
murder.  

DISCUSSION

I.       Challenge
to exclusion of testimony during punishment phase

Dozier first contends that the
trial court erred in refusing to re-open the punishment-phase evidence so that
the jury could hear testimony from one of Donna’s sisters who stated that she
was not in favor of imposing the maximum sentence on Dozier, and from another
sister who opined that Dozier should not receive a life sentence because he
could not be rehabilitated that way.[1]  Article 37.07 of the Texas Code of Criminal
Procedure governs evidence at the punishment phase, providing that “evidence
may be offered by the State and the defendant as to any matter the court deems
relevant to sentencing.”  Tex. Code Crim. Proc. Ann. § 37.07(a) (Vernon Supp. 2009); see Ellison v. State, 201 S.W.3d
714, 719 (Tex. Crim. App. 2006).  

The proposed testimony was not
relevant to sentencing.  In Payne v. Tennessee, the United States
Supreme Court held “that evidence about the victim and about the impact of the
murder on the victim’s family is relevant to the jury’s decision as to whether
or not the death penalty should be imposed,” but victim impact testimony does
not include the victim’s opinion on appropriate punishment.  501 U.S. 808, 827, 111 S. Ct. 2597 (1991).  In Simpson
v. State, the Texas Court of
Criminal Appeals considered whether the State’s erroneous solicitation from the
victim’s son his opinion that the defendant should receive the death penalty
required a mistrial, noting that, under Payne,


the wishes of the victim’s family members as
to the defendant’s fate fall beyond the parameters of victim impact evidence
and are not admissible.  Payne, 501 U.S. at 830 n.2, 111 S. Ct.
at 2611 n.2 (overruling the portion of Booth
v. Maryland, 482 U.S. 496, 107 S. Ct. 2529 (1987), relating to
victim-impact evidence, but not overruling the prohibition on the victim’s
family’s opinions on the defendant or the punishment he should receive).  A statement of their opinions as to the
punishment deserved by the defendant is not a reflection of how their lives
have been impacted by the victim’s death.

119 S.W.3d 262, 271–72 (Tex. Crim. App. 2003); see also
Sattiewhite v. State, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989); Wright v. State, 962 S.W.2d 661, 663 (Tex.
App.—Fort Worth 1998, no pet.)  

Defense counsel in the trial court
conceded that Simpson was “directly
on point” against him, as the proposed testimony did not address any mitigating
factor, but instead directly recommended a sentence.  In contending that the sisters’ opinion
testimony about the sentence that the jury should impose should have been
admitted, Dozier points to the observation in Payne that the sentencing authority is free to consider a range of
relevant material without limitation as to its type or source.  See
Payne, 501 U.S. at 822, 111 S. Ct. at 2606. 
This freedom, however, does not extend to evidence that Payne itself has held is inadmissible.  We therefore hold that the trial court acted
within its discretion in excluding the proffered testimony.




 

II.      Challenges
for Cause

Dozier next contends that the trial
court erred in denying his challenges for cause to two jurors.  “A challenge for cause is an objection made
to a particular juror, alleging some fact which renders the juror incapable or
unfit to serve on the jury.” Tex. Code
Crim. Proc. Ann. art. 35.16(a) (Vernon 2006).  A party may challenge a prospective juror for
cause if the prospective juror demonstrates a bias or prejudice against any of
the law applicable to the case on which the defense is entitled to rely.  Id.
art. 35.16(c)(2).

“The test is whether the bias or
prejudice would substantially impair the prospective juror’s ability to carry
out his oath and instructions in accordance with law.”  Feldman
v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  Before a prospective juror can be excused for
cause on this basis, the law must be explained to him and he must be asked
whether he can follow that law regardless of his personal views.  Jones v.
State, 982 S.W.2d 386, 390 (Tex. Crim. App.1998).  The proponent of a challenge for cause has the
burden to show that the challenge is proper.  Feldman,
71 S.W.3d at 747.  The proponent does not
meet that burden until the record shows that the prospective juror understood
the requirement of the law and could not overcome his prejudice well enough to
follow it.  Id.

We review a trial court’s ruling on
a challenge for cause with “considerable deference” because the trial court is
in the best position to evaluate the prospective juror’s demeanor and
responses.  Russeau v. State, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005); Blue v. State, 125 S.W.3d 491, 497 (Tex.
Crim. App. 2003).  We review the totality
of the voir dire testimony to determine whether it supports the trial court’s
finding with respect to whether the prospective juror is able to follow the law
as instructed.  See King v. State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); Murphy v. State, 229 S.W.3d 334, 339
(Tex. App.—Amarillo 2006, pet. ref’d).  We
will reverse a trial court’s ruling on a challenge for cause “only if a clear
abuse of discretion is evident.”  Blue, 125 S.W.3d at 497.

A.      Challenge to prospective juror 44

Dozier contends that the trial
court should have granted his challenge to prospective juror 44 because the
juror stated that he could not consider probation for someone who intentionally
and knowingly committed murder.  The
record contains the following exchange:

DEFENSE COUNSEL:  [Prospective juror 44], you know, when I
asked you those questions, you said no, you couldn’t consider [probation].  Now, when he asks you those questions, you
said, yeah, you could consider it. 
Okay.  Which is it?  I mean, I just want the bottom line.  Could you really consider probation or
not?  

PROSPECTIVE JUROR 44:  Again, in the —

THE STATE:  I’d object to the form of the question.

THE COURT:  In the proper circumstance.

DEFENSE COUNSEL:  In the proper circumstances could you
consider probation?  Because you told me
no, you couldn’t.  

PROSPECTIVE JUROR 44:  Exactly. 
Yeah, I told him that yesterday, proper circumstances.  

DEFENSE COUNSEL:  But you told me just now, too.

PROSPECTIVE JUROR 44:  Well, yeah, exactly.  

THE STATE:  Objection. 
That’s not letting the juror answer the question.  Could we please let him answer the question?

THE COURT:  You can go ahead and finish your answer. 

PROSPECTIVE JUROR 44:—Okay.  With the proper facts, yes, I could.  But, you know, because right now we don’t
have anything—

DEFENSE COUNSEL:  Right.

PROSPECTIVE JUROR 44:  —I don’t have anything to go
under.

DEFENSE COUNSEL:  Exactly. 


When, as here, the record
demonstrates a vacillating or equivocal prospective juror, we accord great
deference to the trial judge who had the better opportunity to see and hear the
person.  Swearingen v. State, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). The
trial court is able to consider important factors such as demeanor and tone of
voice that do not come through when reviewing a cold record.  Banda v.
State, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); see Bell v. State, 233 S.W.3d 583, 591 (Tex. App.—Waco 2007, pet.
dism’d).  We hold that the record supports
the trial court’s finding with respect to whether prospective juror 44 is able
to follow the law as instructed.




 

B.      Challenge to prospective juror 48

Dozier contends that the trial
court should have granted his challenge to prospective juror 48 because his
responses demonstrated an inability to consider and give effect to mitigating
evidence.  Voir dire questioning
pertinent to this issue is as follows:

THE COURT:  Will you just make your mind up before you
hear the testimony?  [Defense counsel]
doesn’t want you if you would not consider probation.  The State doesn’t want you if you wouldn’t
consider the top end.  The law says
you’re to consider this spectrum.  Now,
with that, can you answer the question?

. . . .

JUROR 48: 
I have a question.  In terms of
the range of punishment, who determines the range of punishment?

DEFENSE COUNSEL:  It’s determined by law.

JUROR 48:  By law.

DEFENSE COUNSEL:  The law says the range of punishment. 

JUROR 48:  What if you don’t agree with the law?

DEFENSE COUNSEL:  That’s what I want to know.  That’s what I want to know.

JUROR 48:  I tell you, I don’t agree with the law.

DEFENSE COUNSEL:  That’s fine. 
In a minute, we’re going to vote. 
I’m trying to take care of the questions.  If you don’t agree with the law, that’s
great, I’m all for that, I just need to know about it.

At defense counsel’s request, the
trial court brought Juror 48 to the bench for further questioning:

DEFENSE COUNSEL:  Did you ever raise your card and say that you
were not open to probation, to consideration of probation in a proper case
where you had found a person guilty of murder? 
Did you ever say that wasn’t an option for you?

JUROR 48:  No, sir.

DEFENSE COUNSEL:  Is that an option for you?

JUROR 48:  It’s an option.  

DEFENSE COUNSEL:  Okay.

JUROR 48:  Under the law, I mean, probation under—yes.  

DEFENSE COUNSEL:  Right. 
But is it—the law says the range of punishment includes the possibility
of probation.  That’s fine, but is it
really an option for you, in your own mind, that you would consider that,
really.  I mean really consider that as a
possibility in an appropriate case?

JUROR 48:  In an appropriate case, yes, I would consider
it.

Next, defense counsel explained
that, in the sentencing phase of the trial, 

the State puts on some evidence about why
they think you ought to give the guy a heavy sentence—he said he’s going to ask
for a life sentence—and then defense has the opportunity to put on some
evidence about why you might want to consider probation or a lighter sentence,
okay?  And you listen to all that
evidence.  Are you willing to listen to
all that evidence?

JUROR 48: 
Yes, sir. 

Defense counsel then asked Juror 48 to explain his
agreement with another panel member’s statement that he would just want to know
facts of crime and was not interested in hearing about the defendant’s
background and education.  Juror 48
explained, 

as far as the background of what they did and
what—you know, what they’ve done before, the fact remains it was a choice they
made.  

DEFENSE COUNSEL:  Right

JUROR 48: 
And their background, you know— 

DEFENSE COUNSEL:  That wouldn’t be relevant to you?

JUROR 48: 
Not to myself.

DEFENSE COUNSEL:  You wouldn’t be willing to consider and give
effect—if the evidence was the person had a good background, that wouldn’t
matter to you; you wouldn’t consider—  

JUROR 48: 
Well, I mean, again, when you make a choice—and everybody knows there’s
consequences for choices that you make, and we all—there’s
just consequences, period.  

DEFENSE COUNSEL:  . . . So, to you, the only thing that matters
is the crime and the circumstances, the immediate circumstances of that crime,
what happened, right?

JUROR 48: 
Yes.

DEFENSE COUNSEL:  The rest of it is not something that you
would want to consider or you would consider?

JUROR 48: 
That’s correct.

          The
State then began questioning Juror 48 to obtain further clarification of his opinion
on this issue:

STATE: 
Okay.  I’m kind of confused, or is
that—he said is that something you would consider, and you said yes[;] . . . let
me back up one more step.  The stuff that
you hear during the guilt/innocence part of the trial you carry with you to the
punishment phase, and that’s essentially what you’re talking about.  But there’s another part to it, too.  Because right now, you don’t know anything
about this guy behind me.  

JUROR 48: Right.

STATE: 
You may hear stuff that he’s a really good person, you may hear stuff
that he’s a really bad person.  Will you
wait to factor that into your decision before you make a decision about what to
have happen?  Don’t you want to hear
about that?  

JUROR 48: 
Yes.  I’m not ruling out I
wouldn’t want to hear about it, but if you’re saying making that because he was
good and that overruled what he’s done, I mean, I would listen to everything, yes.

STATE: 
Okay.  Well, that brings up an
interesting point.  You are saying that
if [defense counsel] brings you lots of good stuff, that’s not going to change
the fact that he’s guilty, and that’s not the point. . . .  [H]aving lots of other good stuff doesn’t
change the fact he’s guilty. . . .  But for the punishment phase, it becomes
something that you need to listen to about what needs to happen next, and the
question is:  If there’s stuff where you
say—you listen to it, and you say he’s a really bad guy, then you put the
sentence over here on the high end, or if you hear lots of stuff about what a
good person he is, then you consider the other end of it.  But you’ve got to hear something one way or
the other. . . .  And what
we need to know is, we can say it, but will you hear it?

JUROR 48: 
Yes.  Yes, I will hear it.

After further discussion, defense counsel pursued the following line of
questioning:

DEFENSE COUNSEL:  [C]an you consider and give effect to
evidence regarding a defendant’s background and character in a murder case in
deciding what the appropriate punishment would be?

JUROR 48: 
Yes, sir.

. . . .

DEFENSE COUNSEL:  Could you consider and give effect to
evidence that the Defendant had emotional problems in assessing punishment in a
murder case.

JUROR 48: 
Yes, sir.

. . . . 

DEFENSE COUNSEL:  [T]he law says you must be able to consider,
as a matter of law, any relevant mitigating evidence.  Do you agree or disagree with the law? . . .

JUROR 48: 
I agree with the law.

Both counsel and the court
exhaustively questioned Juror 48.  Like
prospective juror 44, prospective juror 48 vacillated in describing his
position on the effect of mitigating evidence. 
We therefore defer to the trial court’s ruling and hold that it did not
abuse its discretion in denying Dozier’s challenge for cause to prospective
juror 48.  See Swearingen, 101 S.W.3d at 99. 


III.    Denial
of motion for new trial

Dozier contends that he was
erroneously deprived of a new trial.  He
moved for a new trial because one of the jurors failed to disclose in response
to the questions on the juror information card, “Ever involved in a criminal
case?” and “Ever been involved in a lawsuit?” that he had been charged with
Class B misdemeanor theft, a nondisclosure that caused Dozier significant
harm.  During voir dire, the juror denied
being affected by an incident of family violence, in which he described the
perpetrator who killed his wife’s cousin as someone who “beat the rap.”  Dozier claims that he would have pursued
questioning on that issue had he known of the juror’s criminal background
because of the potential effect of the omission on the juror’s credibility and
his ability to be fair and impartial.  

When a juror “withholds material
information during the voir dire process, the parties are denied the
opportunity to exercise their challenges, thus hampering their selection of a
disinterested and impartial jury.”  Franklin v. State, 138 S.W.3d 351, 354
(Tex. Crim. App. 2004) (internal quotation omitted).  To obtain a new trial based on juror
misconduct, the defendant must show that the juror withheld material
information during voir dire despite the defendant’s due diligence.  Id.
at 355–56; Gonzales v. State, 3 S.W.3d
915, 917 (Tex. Crim. App. 1999).  Diligence requires that counsel ask questions
calculated to bring out information that might indicate a juror’s inability to
be impartial and truthful.  Id.  Unless defense counsel asks such questions,
material information that a juror fails to disclose is not really “withheld.”  Gonzalez,
3 S.W.3d at 917.  Counsel must ask specific questions, not rely
on broad ones, to satisfy this obligation and must ask follow-up questions
after a potential bias is discovered.  Id. 

In Gonzalez, the Court of Criminal Appeals explained that counsel’s
burden to use diligence requires oral questioning during voir dire to follow up
on any written response from a prospective juror that counsel deems material.  The Court observed:

While a questionnaire may serve as an
efficient vehicle for collecting demographic data, it is not the most reliable
way to collect other types of information.  Counsel should never assume that the
respondents will understand each question as it was intended by counsel to be
understood. . . .  [W]ritten
questions are by nature vulnerable to misinterpretation—even questions
that appear to be subject to only one interpretation. 

3 S.W.3d at 917. 
The record does not demonstrate that defense counsel exercised due
diligence in questioning the juror about his written responses to the questions
concerning prior involvement in a criminal case or lawsuit.  Because the record does not show juror
misconduct, the trial court did not err in denying Dozier’s motion for new
trial.  

IV.     Sixth Amendment
and Due Process Challenges

 

In his final issue, Dozier, citing Cunningham v. California, 549 U.S. 270,
127 S. Ct. 856 (2007), and Mullaney v.
Wilbur, 421 U.S. 684, S. Ct. 1881 (1975), contends that section 19.02(d) of
the Texas Penal Code, which requires the defendant to bear the burden to prove
sudden passion by a preponderance of the evidence as an affirmative defense to
a murder charge, relieves the State from having the burden of proof in
violation of his rights under the Sixth Amendment of the United States
Constitution and the due process guarantees afforded under both the federal and
state constitutions.  Dozier acknowledges
that we recently rejected this argument. 
See Noland v. State, 264
S.W.3d 144, 150–51 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d) (relying on
Patterson v. New York, 432 U.S. 197,
198, 205, 97 S. Ct. 2319, 2320, 2325 (1977), and Perry v. State, 158 S.W.3d 438, 448 n.14 (Tex. Crim. App. 2004),
and finding Cunningham “inapposite
because a jury finding of sudden passion under section 19.02(d) of the Texas
Penal Code decreases the punishment range, rather than increases the punishment
range,” and thus does not implicate constitutional right at issue in Cunningham).  We decline Dozier’s request to overrule Noland. 


CONCLUSION

          We
conclude that the trial court did not err in refusing to re-open the punishment
phase evidence so that defense counsel could elicit opinion testimony from
Donna’s sisters about the punishment Dozier should receive or in refusing
Dozier’s challenges for cause to prospective jurors 44 and 48.  We further conclude that the trial court did
not err in denying Dozier’s motion for new trial and reject Dozier’s
constitutional challenges to section 19.02(d) of the Texas Penal Code.  Accordingly, we affirm the judgment of the
trial court.  

 

 

                                                                   Justice
Bland

                                                                   Justice


 

Panel
consists of Justices Jennings, Hanks, and Bland.

Do
not publish.   Tex. R. App. P. 47.2(b).

 











[1]
 Dozier
raised this contention after the close of punishment-phase evidence and again
in his motion for new trial.  Defense
counsel explained that he had just learned of the sisters’ opinions in
conversations he had with them during a break in the proceedings and related
what they said, but did not procure a bill of exceptions or affidavits from the
sisters to show what their proffered testimony would have been.  The record reflects that these witnesses made
victim-impact statements before the jury, but those statements presumably did
not include the opinions Dozier sought to elicit and, in any event, were not
recorded.