**Opinion issued March 13, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00270-CR

————————————

**LAVINCENT DARNELL DONALDSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1286098**

---

## MEMORANDUM OPINION

A jury convicted appellant of capital murder, and the trial court assessed punishment at confinement for life as mandated by TEX. PENAL CODE § 12.31(a)(2) (Vernon 2011). In five issues on appeal, appellant contends that (a) the automatic

punishment of life without parole is a cruel and unusual punishment that violates the Eighth Amendment of the United States Constitution and Article I, section 13 of the Texas Constitution; (b) the trial court erred by denying eight challenges for cause during voir dire; (c) the jury charge allowed the jury to convict appellant of capital murder without proof beyond a reasonable doubt that he intended the complainant's death; and (d) the trial court's assessment of court costs was invalid. We affirm.

## BACKGROUND

Appellant's drug dealer, Joan Ogunleye, was shot and killed. Appellant was charged and convicted of capital murder as a principal or party. Several fact witnesses testified at trial, giving a fairly consistent account of the parties' relationships, the surrounding events, and the motive for the murder.

Appellant was friends with Christopher Faulk ("Kane") and Kendrick Jackson. They spent time together every day. Faulk and appellant smoked marihuana. Several witnesses testified that Joan, the deceased, sold marihuana and appellant was one of her customers. Usually, Joan would meet with appellant at their mutual friend Paul's house, but occasionally she would deliver the drugs to appellant's former residence on Larkdale Street.

On the evening of September 9, 2010, Joan was found dead in her car in the parking lot of the Wal-Mart located at the intersection of Beechnut and Kirkwood. Joan was killed by three gunshots to the head.

Kane testified that appellant called Joan on September 8, 2009, to buy marihuana and Xanax from her. Joan called appellant back on the 9th. Appellant and Kane tried to get her to deliver the drugs as usual, but Joan wanted to meet at the Wal-Mart parking lot. Jackson did not use illegal drugs, but he agreed to drive them in Kane's car because Kane and appellant were intoxicated at the time and Jackson wanted to buy baby formula.[1] After arriving at the Wal-Mart parking lot, Joan directed appellant to her car and signaled him by flashing her headlights. Kane and appellant entered Joan's car, while Jackson remained in Kane's car listening to music. Kane testified that he sat in the back seat of Joan's car and appellant sat in the front passenger seat. After entering the vehicle, Joan handed appellant the marihuana and Xanax. Appellant stated that he had forgotten his money in Kane's car. Appellant and Kane then returned to Kane's vehicle. Appellant searched his backpack and said that he had forgotten his money. Both Kane and appellant returned to Joan's vehicle. This time, appellant took his backpack, in which he frequently carried a gun. Appellant told Kane he should sit

---

[1]     Jackson testified that he did not know that Faulk and appellant planned to get drugs. Faulk testified Jackson was aware that Jackson and Faulk were going to purchase drugs.

3

in the front passenger seat, and appellant sat behind Joan. After entering the vehicle, appellant sat silent for a moment before taking out a gun and telling Joan, "Bitch, I'm going take this and anything else I want." Joan turned, exclaimed, "Oh, hell no," and appellant shot Joan in the head multiple times. Appellant instructed Kane to grab the marihuana and Joan's cell phone, search the vehicle for more drugs and other valuables, and look for money in Joan's bra. They found additional marihuana in the car and then returned to Kane's vehicle with the drugs and Joan's cell phone. Appellant told Jackson to "[g]et the fuck out of here." Jackson, who had been listening to music and was thus unaware of the shooting, asked what happened, and Kane said appellant killed Joan.

Kane testified that after the murder, they traveled to the apartment he shared with Jackson.[2] Upon arrival, appellant removed the shell casings from his gun and stuck them to a piece of duct tape. Appellant then removed the SIM card from Joan's cell phone, broke it in half, and wrapped it in the same piece of duct tape. Afterward, appellant walked to the dumpsters in the apartment complex and threw away the piece of tape. Sometime later, appellant told Kane he sold the murder weapon.

Officer Le of the HPD testified that he was called to respond to a person-down call. The call came from a Murphy Gas Station located a little east of the

---

[2]     Jackson testified that he did not live with Kane at the time and that he asked Kane and appellant to drop him off at his home.

4

Wal-Mart. The attendant, Prentess Powell, told Officer Le that a black male came and said there was somebody dead inside a car. Along with his partner, Officer Le searched the vehicles nearby until he found Joan's body inside her car.

Officer French, a Homicide investigator with the HPD, testified that they were able to identify Joan from her driver's license and a badge she had on the lapel of her jacket. Officer French viewed Wal-Mart's surveillance video and was able to determine that the headlights of Joan's vehicle flashed at 10:24 p.m. He further saw that between 10:25 and 10:32 p.m., two individuals entered and left Joan's car twice.

Joan's cell phone was not found at the scene. Phone records showed that there had been multiple calls between a cell phone number connected to appellant and Joan's cell phone number that fit the timeline of the surveillance video of the Wal-Mart parking lot. Phone records also demonstrated that there had been multiple calls that night going from Kane's phone number to appellant's phone number, and appellant's phone number to his girlfriend's phone number. Appellant's fingerprints were found on the front passenger side door of the car, which is where Kane testified that appellant sat the first time they entered Joan's car. Joan's cell phone was recovered from a pawn shop where it had been pawned by appellant six days after the murder. Paul Copeland, a mutual friend of appellant and the deceased, told investigators appellant confessed to him that he killed Joan.

In contrast to the testimony given by Kane and Jackson, appellant said he was at his girlfriend's house on the night of the murder. He had loaned his phone to Kane at around 8 p.m. and did not get it back until about midnight. Thus, he was not the one calling Joan. Appellant had no reasonable explanation for why Kane was using his own phone and appellant's phone to call Joan. Appellant explained that he used his girlfriend's phone to place the calls to his own phone in order to get it back from Kane.[3] He did not find out about Joan's death until the next morning.

The jury was charged with the offense of capital murder under two theories (as a primary actor and as a party). It returned a verdict finding appellant guilty of capital murder. The trial court entered a sentence of life imprisonment, and appellant timely appealed.

## CRUEL AND UNUSUAL PUNISHMENT

In his first two issues, appellant argues that the automatic sentence for capital murder of life imprisonment without parole violates the Eighth Amendment's ban on cruel and unusual punishment and the Texas Constitution's ban on cruel or unusual punishment because the fact finder is precluded from considering mitigating evidence that might justify a less severe sentence. However,

---

[3] Appellant's girlfriend had different explanations for the phone calls. She testified that appellant might have made a trip to the store. She also said that she frequently called appellant if he was in a different room, even if they were both at her house.

6

"[a]n appellant must present to the trial court a timely, specific objection and obtain an adverse ruling to preserve for appeal his complaints concerning cruel and unusual punishment . . . . " *Benson v. State*, 224 S.W.3d 485, 498 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)(A); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that the failure to object to the sentence at trial as violative of federal and state constitutional bans on cruel and unusual punishment waives appellate review of those claims)). In this case, appellant failed to object to his sentence at trial. Therefore, his federal and state constitutional claims are not preserved for appeal. Accordingly, we overrule appellant's first and second points of error.

## CHALLENGES OF JURORS FOR CAUSE

In his third issue, Appellant contends the trial court erred by denying him eight additional challenges for cause.

### *Applicable Law and Standard of Review*

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon 2005). A prospective juror may be challenged for cause if he or she has a bias or prejudice against any of the law applicable to the case on which the defense is entitled to rely. *Id.* art. 35.16(c)(2).

7

"The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Before a prospective juror can be excused for cause on this basis, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. *Jones v. State*, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998). The proponent of a challenge for cause has the burden of establishing his challenge is proper. *Feldman*, 71 S.W.3d at 747. The proponent does not meet his burden until he has shown that the venireperson understood the requirement of the law and could not overcome his prejudice well enough to follow it. *Id.*

We review a trial court's ruling on a challenge for cause with "considerable deference" because the trial court is in the best position to evaluate the venireperson's demeanor and responses. *Russeau v. State,* 171 S.W.3d 871, 879 (Tex. Crim. App. 2005); *Blue v. State,* 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). We will reverse a trial court's ruling on a challenge for cause "only if a clear abuse of discretion is evident." *Blue,* 125 S.W.3d at 497.

When the record does not contain a clearly objectionable declaration by the venireperson, or the record demonstrates a vacillating or equivocal venireperson, we accord great deference to the trial judge who had the better opportunity to see and hear the person. *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App.

8

2003). The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record. *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *see Bell v. State*, 233 S.W.3d 583, 591 (Tex. App.—Waco 2007, pet. dism'd). We review the totality of the voir dire testimony to determine whether it supports the trial court's finding with respect to whether the prospective juror is able to follow the law as instructed. *See King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Murphy v. State*, 229 S.W.3d 334, 339 (Tex. App.—Amarillo 2006, pet. ref'd).

*Analysis*

Appellant's third complaint is based on the following exchange between his trial counsel and prospective jurors during voir dire:

> APPELLANT'S TRIAL COUNSEL: You're to presume the person innocent until the State, if they can, proves him guilty. Okay. That's that presumption of innocence. So what I like to do is ask people as a group based upon what you know so far, just looking at our client, knowing what he's charged with, based on everything you heard today, if you have some position about whether he is presumed to be innocent? The way I go about doing that is this: I kind of have a scaled chart that I'm kind of going to go right down the row.
>
> You know the presumption of innocence says you're to presume him innocent, right? Not guilty at all. We'll call that zero. Zero is the law. He's presumed innocent. Some people come in and said, Well, I'll pick a ten. I absolutely know he did it as he sits there right now. Okay. And then there might be some people that are in between. Ten is a person absolutely knows he's guilty. Five or six might be a person who says, I'm pretty sure he did, but zero is what the law is. Everybody follow me on that?

9

Give you about 15 seconds to figure out where you would fall on that graph and then we'll go right down the row. Okay. Do it pretty quick.

. . . .

I'm talking about the presumption of innocence as the Judge went over and I'm saying—I'm asking you to imagine to yourself that zero is the law, the presumption of innocence. Ten would be: I absolutely know that he's guilty. I think we've had a few hands today that would probably—I anticipate will probably say that they're ten and then someone else might be somewhere in between or you might not be. You decide where you are. No one will try to change your mind. We'll just go down the row.

Twenty-nine of the venire members ranked themselves at something other than zero. Fifteen of those were eliminated by the State's challenges for cause. Of the remaining fourteen, three were successfully challenged by appellant's trial counsel. After appellant's counsel used all of his peremptory strikes, he requested an additional eight. The trial court denied his request.[4] Before the jury was sworn in, appellant's counsel objected to the inclusion of four jurors on which he would have used his additional peremptory strikes.

Appellant argues that the venire members' nonzero answers established their inability to follow the law regarding the presumption of innocence and that the trial court erred in denying his challenges for cause. Appellant contends this caused him

---

[4] Trial Counsel subsequently realized that he had incorrectly listed venire member 16 on his list of denied challenges for cause. He then requested an additional 7 peremptory strikes. The trial court did not rule on his request.

to be tried by a jury that included four objectionable jurors, and he was denied his constitutional right to an impartial jury.

The State counters that the question posed by appellant's counsel merely inquired into venire members' personal beliefs. The State contends that appellant's counsel failed to establish that venire members' were properly challengeable for cause because he did not ask any of the jurors whether, despite their personal beliefs, they would be able to follow the law. The State points us to *Barnes v. State*, No. 14-04-00478-CR, 2005 WL 2420375 (Tex. App.—Houston [14th Dist.], Aug. 25, 2005 no pet.) (mem. op., not designated for publication), a case from our sister circuit with similar facts.

In *Barnes*, appellant's trial counsel asked venire members to rate themselves on a scale from zero to five, where zero represented the presumption of innocence and five represented a belief that appellant was guilty. *Id.* at *1. The appellant challenged for cause the venire members who gave nonzero answers. *Id.* The trial court denied appellant's challenges for cause and also denied appellant's request for additional peremptory strikes. *Id.* Appellant contended that the trial court erred in denying those challenges because the venire members who gave nonzero answers demonstrated an inability to follow the law regarding the presumption of innocence. *Id.* at *2. The Fourteenth Court of Appeals held that the trial court did not err in denying the appellant's challenges. *Id.* at *3. It noted that, despite the

11

venire members' statements regarding the presumption of innocence, the record did not establish that any particular venire member's beliefs would prevent him from following the law because appellant's trial counsel failed to ask the challenged venire members whether their personal beliefs would make them unable to presume appellant's innocence. *Id.* The court concluded that appellant failed to establish that the venire members were properly challengeable for cause. *Id.*

We agree with the State and the rationale of the Fourteenth Court of Appeals in *Barnes*. Appellant's inquiry amounted to no more than a survey of venire members' personal feelings. Appellant's counsel failed to prove that the prospective jurors who gave nonzero answers were properly challengeable for cause because he did not ask whether they could follow the law despite their prejudices. Therefore, the trial court did not abuse its discretion in denying the appellant's challenges for cause.

Accordingly, we overrule appellant's third point of error.

## JURY CHARGE

In his fourth point of error, appellant challenges the jury charge on three grounds. First, he contends that the trial court erred by not instructing the jury on the lesser charges of felony murder and murder. Second, he contends that the jury charge's discussion of the law of parties was inaccurate. Third, he asserts that the

12

trial court erred in not instructing the jury that Kendrick Jackson was, or could have been, an accomplice. We address each of these arguments in turn.

### *Lesser-Included Offenses*

Appellant first argues that the trial court committed reversible error by failing to charge the jury with the lesser offenses of felony murder and murder. Appellant cites *Hopper v. Evans*, 456 U.S. 605, 611, 102 S. Ct. 2049, 2053 (1982), for the proposition that due process requires the inclusion of lesser-included offenses in the jury charge when the evidence warrants such an instruction so the jury may convict a defendant of any crime fairly supported by the evidence. He cites *O'Brien v. State*, 89 S.W.3d 753, 755 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), for the proposition that the trial court is required to give a jury charge on lesser-included offenses.

The State notes that neither party requested the inclusion of lesser-included offenses in the jury charge, and contends that it is not error for a trial court to omit lesser-included offenses if neither party requests them. *See Tolbert v. State*, 306 S.W.3d 776, 779-82 (Tex. Crim. App. 2010). Instructions on lesser-included offenses are not law applicable to the case if neither party requests them. *Id.*at 782.

We agree with the State that the trial court did not err by failing to include lesser-included offenses. The cases cited by appellant are inapposite. In *Hopper*, the appellant had been convicted by a jury that was prohibited from considering

13

lesser-included offenses by statute. *Hopper*, 456 U.S. at 605, 102 S. Ct. at 2049. The Court was not addressing whether due process requires that lesser-included offenses be included in the jury charge without a request. *O'Brien* is distinguishable because the appellant in that case asked the trial court to include lesser-included offenses in the jury charge. *O'Brien*, 89 S.W.3d at 755.

Here, neither party made such a request. So while "[a] charge on a lesser-included offense must be given if (1) the lesser-included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense[,]" *id.* (citing *Rosseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993)), a trial judge is not required to *sua sponte* instruct the jury on lesser-included offenses. *Tolbert*, 306 S.W.3d at 780. Requesting instructions on lesser-included offenses are a matter of trial strategy. *Id.* Finding for appellant would mean "a defendant could have one strategy at trial that failed and then spring quite a different strategy on appeal, with the trial court never having the opportunity to pass on the latter, and still prevail. This . . . would serve only to undermine the integrity of the 'main event' of trial by encouraging improper gamesmanship." *Id.*

Therefore, we overrule appellant's first complaint concerning the jury charge.

14

*Law of Parties Instruction*

Appellant's second complaint regarding the jury charge stems from the law of parties instruction.

### 1. Applicable Law

Texas Penal Code § 7.02(a)(2) makes a person criminally responsible for the conduct of another if, in "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2011).

At trial, the court gave the following instruction:

> If you find from the evidence beyond a reasonable doubt that on or about the 9th day of September, 2010, in Harris County, Texas, Christopher Faulk, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Joan Ogunley [sic], intentionally cause the death of Joan Ogunley [sic] by shooting Joan Ogunley [sic] with a deadly weapon, namely a firearm, and that the defendant, Lavincent [sic] Darnell Donaldson, **with the intent to promote or assist the commission of *the offense*, if any, solicited, encouraged, directed, aided or attempted to aid Christopher Faulk to commit *the offense***, if he did, then you will find the defendant guilty of capital murder, as charged in the indictment. (Emphasis added).

Appellant argues that the jury charge was misleading and legally incorrect because the application paragraph allowed the jury to convict him of capital murder even if it believed he only intended to promote or assist the robbery, not the murder, of Joan.

15

## 2. *Standard of Review*

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State,* 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that *any* harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.' " *Almanza*, 686 S.W.2d at 171.

16

Fundamental errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Id.* at 172. When considering whether a defendant suffered egregious harm, the reviewing court must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174.

Appellant contends that the jury charge is ambiguous because it is unclear whether "the offense" that Appellant had to intend to promote or assist refers to the robbery or the murder of Joan. To be guilty as a party under § 7.02(a)(2), a defendant must intend to promote or assist in the actual killing. TEX. PENAL CODE ANN. § 7.02(a)(2). Appellant alleges that given the ambiguity in the charge, the jury could have convicted him even if it believed he only intended to aid in the robbery.

The State argues that, even though the "wording in the law-of-parties application paragraph is a little vague," there was no error in the instruction. Alternatively, the State declares that even if there was error, it was harmless.

### 3. *Preservation of Error*

Appellant contends that he objected to the allegedly ambiguous charge at trial, and therefore all he is required to demonstrate is that he suffered "some harm" from the erroneous instruction. The State, however, contends that the objection appellant made at trial differs from the objection appellant raises on appeal. The State argues that at trial, appellant objected to the presence of the law of parties instruction, not any vagueness in the language. We agree.

At trial, appellant's counsel said, "I believe you decided to add a parties application in the charging paragraph and we would object to that." It is true that "'[m]agic words' are not required[,]" but the "substance of the complaint [must be] conveyed to the trial judge." *Bennet v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007). Appellant's objection at trial clearly relates to the presence of the instruction. The trial judge had no reason to believe appellant was objecting to any ambiguity in the wording. Therefore, appellant must establish that he suffered "egregious harm" to obtain reversal.

### 4. *Egregious Harm*

Appellant argues that the alleged error was harmful because the jury may have convicted him on legally inadequate grounds. It may have convicted him of capital murder even if it found he only intended to promote or assist the robbery, and a verdict which may rest on legally inadequate grounds must be set aside if it

18

is impossible to tell which ground the jury selected. *Yates v. United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1073 (1957), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141 (1978). The State responds that, despite any confusion that might have arisen from the jury charge, appellant was not egregiously harmed.

In examining the jury charge as a whole, the state of the evidence, and the arguments of counsel, we hold that appellant was not egregiously harmed by the arguably ambiguous application paragraph. Any vagueness that existed in the jury charge was cured by the closing arguments of appellant's trial counsel and the State. During closing arguments, appellant's trial counsel discussed the law of parties. He stated:

> The Court's charge has told you that you have another way of doing this. If you believe, and I think there's some who do, that Christopher Faulk is the one who pulled that trigger, the Court's charge tells you, you can still find [appellant] guilty, but in order to find him guilty, you've got to find that he was a party to the offense, that he did something to aid or assist Christopher Faulk in committing this offense.
> . . . .
> In order to find him guilty, according to the Court's charge, if Christopher Faulk is the one who pulled the trigger, you'd have to find [appellant] had the intent that the offense be committed and that he somehow aided or encouraged or attempted to aid or encourage Christopher Faulk to do it. My point is this: If you have a reasonable doubt that LaVincent was there, and I think you should, and you next look at the paragraph that says, Well, maybe Christopher Faulk is the one who did it, maybe we can get him that way. I'm just telling you that I think if you have a reasonable doubt that he was there, he's not

19

guilty either way. That's the reason why that charge is there is to give you another opportunity to consider that.

Just remember he's got to have had – when I mean "he," I'm talking about my client, [appellant]. He's got to have had the intent that the offense be committed.

There can be no confusion that as appellant's trial counsel discussed the law of parties charge with the jury, the offense to which he was referring was capital murder. He clearly stated appellant must be found to have intended the offense committed. The State's closing arguments further clarified the meaning of the word "offense" in the jury charge:

> So what I want to talk to you next about is the law of parties…. It is two ways the defendant could be convicted based on your understanding of the evidence and your belief in the evidence. But either LaVincent Donaldson is the one that shot Joan Ogunleye through the course of a robbery in Harris County, that he himself shot and killed her. You can believe it that way. Or you might believe that [appellant] helped someone else, Christopher Faulk, somebody else commit that capital murder. That either he directed, solicited, encouraged, directed or attempted – or aided or attempted to aid someone else – in the charge it says Christopher Faulk – to commit that offense, [appellant] also is found guilty of capital murder by helping.

> You all don't have to agree which way. Six of you may believe that [Appellant] is the gunman, that he fired the shot, that he killed her. He is the principal party. Six of you may believe, Well, I think it was somebody else, but [appellant] certainly helped. He solicited or he encouraged or he directed or attempted to aid or aided someone else to commit that offense, he's guilty as well. Six of you may believe he's the principal. Six of you may believe he's a party. Either one is guilty of capital murder and the 12 of you do not have to agree on which way. Law of parties.

It is evident from the closing arguments that the offense which appellant had to intend to assist or promote is the murder of Joan. Appellant was thus not egregiously harmed. The jury charge, even if erroneous, did not rob appellant of a fair trial, affect the very basis of the case, deprive him of a valuable right, or vitally affect a defensive theory. In fact, appellant's defensive theory was that he was not even present when the murder was committed, not that he intended only to commit a robbery. As such, appellant's second complaint regarding the jury charge is overruled.

### *Accomplice-Witness Instruction*

Appellant next complains that the trial court erred by failing to instruct the jury that Kendrick Jackson was an accomplice as a matter of law, or in the alternative, that jurors should have been allowed to determine whether he was an accomplice as a matter of fact. Appellant contends that the trial court erred in failing to instruct the jury on the accomplice witness rule, and he was harmed because, without the instruction, the jury could use Jackson's testimony to corroborate Faulk's testimony in violation of article 38.14 of the Texas Code of Criminal Procedure. Appellant cites *Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012), to argue that, as the driver of the car, Jackson could have been charged with capital murder and was thus an accomplice as a matter of law. Alternatively, appellant argues that there was at least sufficient evidence to instruct the jury to

21

determine whether Jackson was an accomplice as a matter of fact. As a result of failing to include an accomplice witness instruction, appellant asserts that the jury did not consider Jackson's testimony with the skepticism due an accomplice witness. The State responds that Jackson was not an accomplice because there was no evidence that he participated in the robbery or shooting or that he assisted the robbery or shooting with the culpable mental state, and that, even if he was an accomplice, the trial court's failure to so instruct the jury did not cause appellant egregious harm.

### 1. Applicable Law

Under Texas Code of Criminal Procedure article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense. *See* TEX. CODE CRIM. PROC. ANN. art 38.14 (Vernon 2005).

An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state. *Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Presence at the crime scene alone does not make a person an accomplice; an accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed. *Smith v. State,* 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (citing *Kunkle v. State,* 171 S.W.2d 435, 439 (Tex. Crim. App. 1986)).

22

Witnesses may be accomplices as a matter of law or as a matter of fact. *Smith*, 332 S.W.3d at 439. A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law, and the trial court must instruct the jury accordingly. *Id.* If conflicting evidence of the witness's role in the offense exists, then the trial judge may instruct the jury to determine a witness's status as a fact issue. *Id.* at 439–40. But if the evidence clearly shows that a witness is not an accomplice, the trial judge is not obliged to instruct the jury on the accomplice witness rule. *Id* .at 440.

2. ***Egregious Harm***

Failure to submit an instruction on accomplice-witness testimony, absent objection or request for such instruction at trial, is not reversible error when the evidence clearly warrants a conviction independent of the accomplice's testimony—egregious harm must be shown. *Solis v. State,* 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). The egregious harm standard requires appellate review to inquire whether the jurors "would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012) (citing *Saunders v. State*, 817 S.W.2d at 688, 692 (Tex. Crim. App. 1991)). Reversal is required if the error "created such harm that he [the defendant]

has not received a fair and impartial trial—in short, egregious harm." *Solis,* 792 S.W.2d at 98 (citing *Almanza,* 686 S.W.2d at 171–72).

Even assuming that the facts support the submission of an accomplice-witness instruction regarding Jackson's testimony in this case, the prosecution's case for conviction was not "actually made clearly and significantly more persuasive by the error." *Saunders,* 817 S.W.2d at 692. Sufficient corroborating non-accomplice evidence existed to support appellant's conviction for the crime, such as Paul Copeland's testimony that appellant confessed to him that he killed Joan, the fact that appellant's fingerprints were found on Joan's car, evidence demonstrating that appellant pawned Joan's phone six days after the murder, and evidence of numerous phone calls from appellant's telephone to Joan the night of the murder.

Viewing the record in its entirety, we conclude that the corroborating evidence from sources other than Jackson is sufficient to connect appellant to the offenses, and as such he did not suffer egregious harm due to the lack of an accomplice-witness instruction regarding Jackson's testimony in the charge.

We overrule appellant's third complaint concerning the jury charge. Having overruled all of appellant's complaints about the jury charge, we also overrule his fourth point of error.

# TRIAL COURT'S ASSESSMENT OF COSTS

In his fifth point of error, Appellant challenges the trial court's assessment of $384 in court costs because no bill of costs appeared in the record when the judgment was signed by the trial court.

## *Applicable Law*

Under article 103.001 of the Texas Code of Criminal Procedure, "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (Vernon 2006). We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each costs. *Johnson v. State*, No. PD-0193-13, 2014 WL 714736, at *2 (Tex. Crim. App. Feb. 26, 2014). Traditional sufficiency-of-the-evidence standards of review do not apply. *Id.*

## *Analysis*

Appellant requests that the judgment be modified to delete the assessment of court costs because no bill of costs appeared in the record, thus, there is insufficient evidence to support the judgment. However, as stated above, traditional sufficiency-of-the-evidence standards of review do not apply. *Id.*

25

Further, the record supports the assessment of costs in this case because a supplemental record has been filed containing a bill of costs. *See id*. at *4 ("We conclude that a bill of costs is a relevant item that if omitted from the record, can be prepared and added to the record via a supplemental clerk's record."). There being no challenge to any specific cost or the basis for the assessment of such cost, the bill of costs supports the costs assessed in the judgment. *Id.* at *8.

We overrule appellant's fifth point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

26